# EXHIBIT 1



# Advisory notice to policyholders regarding the U.S. Treasury Department's Office of Foreign Assets Control ("OFAC") regulations

No coverage is provided by this policyholder notice nor can it be construed to replace any provisions of your policy.  You should read your policy and review your declarations page for complete information on the coverages you are provided.

This notice provides information concerning possible impact on your insurance coverage due to directives issued by the U.S. Treasury Department's Office of Foreign Assets Control ("OFAC").

**Please read this Notice carefully.**

OFAC administers and enforces sanctions policy based on Presidential declarations of "national emergency".  OFAC has identified and listed numerous:

- Foreign agents;
- Front organizations;
- Terrorists;
- Terrorist organizations; and
- Narcotics traffickers;

as "Specially Designated Nationals and Blocked Persons."  This list can be located on the United States Treasury's web site – http://www.treasury.gov/about/organizational-structure/offices/Pages/Office-of-Foreign-Assets-Control.aspx.

In accordance with OFAC regulations, if it is determined that you or any other insured, or any person or entity claiming the benefits of this insurance has violated U.S. sanctions law or is a Specially Designated National and Blocked Person, as identified by OFAC, this insurance will be considered a blocked or frozen contract and all provisions of this insurance are immediately subject to OFAC restrictions.  When an insurance policy is considered to be such a blocked or frozen contract, no payments or premium refunds may be made without authorization from OFAC.  Other limitations on premiums and payments also apply.

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

# Disclosure Statement



It is our pleasure to present the enclosed policy to you
for presentation to your customer.

**INSTRUCTION TO AGENT OR BROKER:**

WE REQUIRE THAT YOU TRANSMIT THE ATTACHED/ENCLOSED DISCLOSURE STATEMENT TO THE CUSTOMER
WITH THE POLICY.

Once again, thank you for your interest, and we look forward to meeting your needs and those of your customers.

# Disclosure Statement



**NOTICE OF DISCLOSURE FOR AGENT & BROKER COMPENSATION**

If you want to learn more about the compensation Zurich pays agents and brokers visit:

http://www.zurichnaproducercompensation.com

or call the following toll-free number:  (866) 903-1192.

This Notice is provided on behalf of Zurich American Insurance Company

and its underwriting subsidiaries.

# Z Choice™ Pollution Liability Declarations



**STEADFAST INSURANCE COMPANY**
Dover, Delaware
Administrative Offices - 1400 American Lane
Schaumburg, Illinois 60196-1056

---

**THIS POLICY PROVIDES COVERAGE ON A DISCOVERY AND/OR CLAIMS-MADE AND REPORTED BASIS DEPENDING UPON THE COVERAGE LISTED AS PROVIDED BELOW. PAYMENT OF DEFENSE COSTS ERODES THE LIMITS OF LIABILITY. THE ITEMS BELOW MAY BE MODIFIED BY ENDORSEMENT. READ THE DECLARATIONS, POLICY, AND ALL ENDORSEMENTS CAREFULLY.**

---

**Policy Number:** EPC 5944550 02          **Renewal of:** EPC 5944550 01

**Item 1.** **Named Insured:** KEN'S FOODS, INC.

              **Address:** 1 D'ANGELO DRIVE
                            MARLBOROUGH, MA 01752--3066

**Item 2.** **Policy Period:** From: 11/23/2014   To:   11/23/2019
                             12:01 A.M. Local time at the address shown in Item 1.

**Item 3.** **Limits of Liability:** $10,000,000  Each Pollution Event Limit
                                   $10,000,000  Aggregate Policy Limit

**Item 4.** **Deductible:** $25,000        Each Pollution Event

**Item 5.** **Coverages:**

This policy provides coverage only with respect to the specific Insuring Agreements indicated below and as described in the Z Choice Pollution Liability policy, and/or in any endorsements. If the word YES appears in the PROVIDED column corresponding with an insuring agreement listed below, it means that such coverage is provided. If the word NO appears or the space is blank or blacked out it means that such coverage is not provided. Sub-limits are described in Section VI. of the policy.

| INSURING AGREEMENTS | PROVIDED | SUB-LIMIT / AGGREGATE | SEPARATE DEDUCTIBLE |
|---|---|---|---|
| **Coverage A: Cleanup Costs – Existing Pollution Event** | | | |
| 1.(a) On-Site First Party Discovery | YES | NO | NO |
| 1.(b) On-Site Third Party Liability | YES | NO | NO |
| 2.(a) Off-Site First Party Discovery | YES | NO | NO |
| 2.(b) Off-Site Third Party Liability | YES | NO | NO |
| **Coverage B: Bodily Injury or Property Damage – Existing Pollution Event** | | | |
| 1.(a) On-Site Bodily Injury | YES | NO | NO |
| 1.(b) On-Site Property Damage | YES | NO | NO |
| 2.(a) Off-Site Bodily Injury | YES | NO | NO |
| 2.(b) Off-Site Property Damage | YES | NO | NO |
| **Coverage C:  Cleanup Costs – New Pollution Event** | | | |
| 1.(a) On-Site First Party Discovery | YES | NO | NO |
| 1.(b) On-Site Third Party Liability | YES | NO | NO |
| 2.(a) Off-Site First Party Discovery | YES | NO | NO |
| 2.(b) Off-Site Third Party Liability | YES | NO | NO |
| **Coverage D: Bodily Injury or Property Damage – New Pollution Event** | | | |
| 1.(a) On-Site Bodily Injury | YES | NO | NO |
| 1.(b) On-Site Property Damage | YES | NO | NO |
| 2.(a) Off-Site Bodily Injury | YES | NO | NO |
| 2.(b) Off-Site Property Damage | YES | NO | NO |
| **Coverage E: Natural Resource Damages** | | | |
| 1. Existing Pollution Event | YES | NO | NO |
| 2. New Pollution Event | YES | NO | NO |
| **Coverage F: Choice Coverage – Non-Owned Locations** | | | |
| 1.(a) On-Site Bodily Injury | YES | NO | NO |
| 1.(b) On-Site Property Damage | YES | NO | NO |
| 1.(c) On-Site Cleanup Costs | YES | NO | NO |
| 2.(a) Off-Site Bodily Injury | YES | NO | NO |
| 2.(b) Off-Site Property Damage | YES | NO | NO |
| 2.(c) Off-Site Cleanup Costs | YES | NO | NO |
| **Coverage G: Choice Coverage – Transportation of Materials** | | | |
| 1. Bodily Injury | YES | NO | NO |
| 2. Property Damage | YES | NO | NO |
| 3. Cleanup Costs | YES | NO | NO |

| INSURING AGREEMENTS - CHOICE COVERAGE ENDORSEMENTS | PROVIDED | SUB-LIMIT / AGGREGATE | SEPARATE DEDUCTIBLE |
|---|---|---|---|
| **Coverage H: Choice Coverage – Suspension of Operations** | | | |
| 1. Existing Pollution Event | YES | NO | NO |
| 2. New Pollution Event | YES | NO | NO |
| **Coverage I: Choice Coverage-Suspension of Tenant Occupancy** | | | |
| 1. Existing Pollution Event | NO | NO | NO |
| 2. New Pollution Event | NO | NO | NO |
| **Coverage J: Choice Coverage – Delay In Construction** | | | |
| 1. Existing Pollution Event | NO | NO | NO |
| 2. New Pollution Event | NO | NO | NO |
| **Coverage K: Choice Coverage – Fungus/Spore Event** | | | |
| 1. Bodily Injury | YES | NO | NO |
| 2. Property Damage | YES | NO | NO |
| 3. On-Site Third Party Cleanup Costs | YES | NO | NO |
| **Coverage L: Choice Coverage – Lead Release Incident** | | | |
| 1. Bodily Injury | NO | NO | NO |
| 2. Property Damage (Time Element) | NO | NO | NO |
| 3. Cleanup Costs  (Time Element) | NO | NO | NO |
| **Coverage M: Choice Coverage - Asbestos Release Incident** | | | |
| 1. Bodily Injury | NO | NO | NO |
| 2 Property Damage (Time Element) | NO | NO | NO |
| 3. Cleanup Costs  (Time Element) | NO | NO | NO |
| **Coverage N: Choice Coverage – Financial Assurance** | NO | NO | NO |

**Item 6.**   **Delimitation Date:**   11/23/2008

**Item 7.**   **Retroactive Date:**   N/A

**Item 8.**   **Policy Premium:**   $79,979

**Item 9.**   **Notice to Us:**   All notices shall be sent to:

Zurich North America - Specialties Environmental Claims
P.O. Box 968041
Schaumburg, IL 60196-8041
Fax:  (866) 255-2962
Email:  usz_zurich_environmental@zurichna.com
or such other address of which we notify the Named Insured above in writing

**Item 10.  Broker:**   HAYS INS BROKERAGE SERVICES OF NEW ENGLAND, LLC

133 FEDERAL STREET

BOSTON, MA 02110-1703

# Schedule of Forms and Endorsements



| Form/Endorsement Title | Form Number |
|---|---|
| Advisory Notice to Policyholders | U-GU-1041-A (03/11) |
| Z-Choice Pollution Liability Declarations | STF-EPC-D-101-A CW (10/09) |
| Z-Choice Pollution Liability | STF-EPC-100-B CW (03/08) |
| Z-Choice Coverage G: Transportation of Materials | STF-EPC-104-A CW (11/07) |
| Z-Choice Coverage H: Suspension of Operations-Loss of Business Income | STF-EPC-107-B CW (03/08) |
| Z-Choice Coverage K:  Fungus and/or Spores-Third Party Bodily Injury, Property Damage And Cleanup Costs | STF-EPC-110-B CW (04/09) |
| Additional Named Insured | STF-EPC-115-A CW (03/08) |
| Amendment of Cancellation Endorsement | STF-EPC-119-A CW (11/07) |
| Choice of Law | STF-EPC-120-A CW (11/07) |
| Extended Reporting Period | STF-EPC-131-A CW (11/07) |
| Nuclear Exclusion | STF-EPC-143-A CW (11/07) |
| Schedule of Covered Locations | STF-EPC-150-A CW (08/12) |
| Schedule Underground Storage Tank | STF-EPC-153-A CW (11/07) |
| Broad Named Insured | STF-EPC-177-A CW (04/08) |
| Definition of Governmental Authority (Including Licensed Site Professional Massachusetts) | STF-EPC-178-A CW (04/08) |
| Fines & Penalties Endorsement | STF-EPC-187-A CW (11/07) |
| Z Choice Coverage F:  Non Owned Locations (Blanket) | STF-EPC-192-B CW (03/11) |
| Z Choice Coverage E: Natural Resource Damages | STF-EPC-198-A CW (01/09) |
| Minimum Earned Premium Endorsement | STF-EPC-207-A CW (12/09) |
| Crisis Management Expense Endorsement | STF-EPC-226-A CW (12/10) |
| Cleanup Costs (Including Green Remediation and Green Standards) Endorsement | STF-EPC-232-A CW (01/11) |

| | |
|---|---|
| Important Notice | STF-GU-199-B (01/09) |
| Disclosure Of Premium (Relating To Disposition Of TRIA) | U-GU-692-C CW  (06/13) |
| Cap on Losses from Certified Acts of Terrorism | U-GU-767-A CW (01/08) |

# Z Choice Pollution Liability



**ZURICH**®

This policy provides coverage on a discovery and/or claims-made and reported basis depending upon the insuring agreements specifically listed as provided in Item 5 of the Declarations. A "pollution event" must be first "discovered" and/or a "claim" must be first made against an "insured" during the "policy period" and such "discovery" or "claim" must be reported to us in writing during the "policy period" or during an applicable extended reporting period. Notice of a "potential claim" is not a "claim" and does not trigger coverage under the policy.

This policy has certain unique provisions and requirements that may be different from other policies the "insured" may have purchased.   Coverage is provided only if the word YES appears in the column marked PROVIDED in the schedule set forth in Item 5 of the Declarations.   The payment of "claim expenses", including defense costs, reduces the Limits of Liability set forth in Item 3 of the Declarations.   If the applicable Limits of Liability are exhausted, we shall not be liable for "claim expenses" or for any "loss", "cleanup costs", "natural resource damages" or "other loss" which would otherwise be covered under this policy.  Read the entire policy carefully including any endorsements thereto to determine rights, duties, and what is and is not covered.

Throughout this policy, the words we, us and our refer to the company providing this insurance as identified in the Declarations.   Words and phrases that appear in quotation marks have special meaning.   Refer to DEFINITIONS (Section III).

In consideration of the payment of premium and the "named insured's" undertaking to pay the Deductible as described herein, in reliance upon the statements made during the application process and in the Application all of which are made a part hereof, and subject to the Limits of Liability of this insurance as set forth in Item 3 of the Declarations, and the exclusions, conditions and other terms of this policy, we agree with the "named insured" as follows:

## I.   INSURING AGREEMENTS

THESE COVERAGES ONLY APPLY IF AND TO THE EXTENT SPECIFICALLY LISTED AS PROVIDED IN ITEM 5 OF THE DECLARATIONS

### COVERAGE A:  CLEANUP COSTS – EXISTING POLLUTION EVENT

1.  <u>On-Site</u>

    (a)  First Party Discovery

    We will pay "cleanup costs" to the extent resulting from an "existing pollution event" on, at or under a "covered location", if that "existing pollution event" is first "discovered" during the "policy period" and the "discovery" is reported to us in writing during the "policy period" or any applicable extended reporting period.

    (b)  Third Party Liability

    We will pay "cleanup costs" that an "insured" is legally obligated to pay as a result of a "claim" resulting from an "existing pollution event" on, at, or under a "covered location", provided the "claim" is first made against the "insured" during the "policy period", and the "claim" is reported to us in writing during the "policy period" or any applicable extended reporting period.

    Unless covered under any other insuring agreement specifically listed as provided in Item 5 of the Declarations, we shall have no obligation to pay any "cleanup costs" attributable to  any irritant, contaminant or pollutant that is outside the boundaries of a "covered location".

2.  <u>Off-Site</u>

    (a)  First Party Discovery

    We will pay "cleanup costs" to the extent resulting from an "existing pollution event" that migrates beyond the boundaries from a "covered location", if that "existing pollution event" is first "discovered" during the "policy

period" and the "discovery" is reported to us in writing during the "policy period" or any applicable extended reporting period.

(b) Third Party Liability

We will pay "cleanup costs" that an "insured" is legally obligated to pay as a result of a "claim" resulting from an "existing pollution event" that migrates beyond the boundaries from a "covered location", provided the "claim" is first made against the "insured" during the "policy period", and the "claim" is reported to us in writing during the "policy period" or any applicable extended reporting period.

Unless covered under any other insuring agreement specifically listed as provided in Item 5 of the Declarations, we shall have no obligation to pay any "cleanup costs" attributable to any irritant, contaminant or pollutant that is on, at or under a "covered location".

## COVERAGE B:  BODILY INJURY OR PROPERTY DAMAGE – EXISTING POLLUTION EVENT

1. <u>On-Site</u>

(a) Bodily Injury

We will pay "loss" that an "insured" is legally obligated to pay as a result of a "claim" for "bodily injury":

(i)   sustained by a person while within the boundaries of a "covered location"; and

(ii)  resulting from an "existing pollution event" on, at or under such "covered location";

provided the "claim" is first made against the "insured" during the "policy period", and the "claim" is reported to us in writing during the "policy period" or any applicable extended reporting period.

(b) Property Damage

We will pay "loss" that an "insured" is legally obligated to pay as a result of a "claim" for "property damage":

(i)   to property within the boundaries of a "covered location"; and

(ii)  resulting from an "existing pollution event" on, at or under such "covered location";

provided the "claim" is first made against the "insured" during the "policy period", and the "claim" is reported to us in writing during the "policy period" or any applicable extended reporting period.

Unless covered under any other insuring agreement specifically listed as provided in Item 5 of the Declarations, we shall have no obligation to pay any "loss" attributable to any irritant, contaminant or pollutant that is outside the boundaries of a "covered location".

2. <u>Off-Site</u>

(a) Bodily Injury

We will pay "loss" that an "insured" is legally obligated to pay as a result of a "claim" for "bodily injury":

(i)   sustained by a person while beyond the boundaries of a "covered location", and

(ii)  resulting from an "existing pollution event" that migrates beyond the boundaries from such "covered location";

provided the "claim" is first made against the "insured" during the "policy period", and the "claim" is reported to us in writing during the "policy period" or any applicable extended reporting period.

(b) Property Damage

We will pay "loss" that an "insured" is legally obligated to pay as a result of a "claim" for "property damage":

(i)   to property beyond the boundaries of a "covered location"; and

(ii)  resulting from an "existing pollution event" that migrates beyond the boundaries from such "covered location";

provided the "claim" is first made against the "insured" during the "policy period", and the "claim" is reported to us in writing during the "policy period" or any applicable extended reporting period.

Unless covered under any other insuring agreement specifically listed as provided in Item 5 of the Declarations, we shall have no obligation to pay any "loss" attributable to any irritant, contaminant or pollutant that is on, at or under a "covered location".

## COVERAGE C:  CLEANUP COSTS – NEW POLLUTION EVENT

1.  <u>On-Site</u>

    (a)  First Party Discovery

        We will pay "cleanup costs" to the extent resulting from a "new pollution event" on, at or under a "covered location", if that "new pollution event" is first "discovered" during the "policy period" and the "discovery" is reported to us in writing during the "policy period" or any applicable extended reporting period.

    (b)  Third Party Liability

        We will pay "cleanup costs" that an "insured" is legally obligated to pay as a result of a "claim" resulting from a "new pollution event" on, at, or under a "covered location", provided the "claim" is first made against the "insured" during the "policy period", and the "claim" is reported to us in writing during the "policy period" or any applicable extended reporting period.

    Unless covered under any other insuring agreement specifically listed as provided in Item 5 of the Declarations, we shall have no obligation to pay any "cleanup costs" attributable to any irritant, contaminant or pollutant that is outside the boundaries of a "covered location".

2.  <u>Off-Site</u>

    (a)  First Party Discovery

        We will pay "cleanup costs" to the extent resulting from a "new pollution event" that migrates beyond the boundaries from a "covered location", if that "new pollution event" is first "discovered" during the "policy period" and the "discovery" is reported to us in writing during the "policy period" or any applicable extended reporting period.

    (b)  Third Party Liability

        We will pay "cleanup costs" that an "insured" is legally obligated to pay as a result of a "claim" resulting from a "new pollution event" that migrates beyond the boundaries from a "covered location", provided the "claim" is first made against the "insured" during the "policy period", and the "claim" is reported to us in writing during the "policy period" or any applicable extended reporting period.

    Unless covered under any other insuring agreement specifically listed as provided in Item 5 of the Declarations, we shall have no obligation to pay any "cleanup costs" attributable to any irritant, contaminant or pollutant that is on, at or under a "covered location".

## COVERAGE D:  BODILY INJURY OR PROPERTY DAMAGE – NEW POLLUTION EVENT

1.  <u>On-Site</u>

    (a)  Bodily Injury

        We will pay "loss" that an "insured" is legally obligated to pay as a result of a "claim" for "bodily injury":

        (i)   sustained by a person while within the boundaries of a "covered location"; and

        (ii)  resulting from a "new pollution event" on, at or under such "covered location";

        provided the "claim" is first made against the "insured" during the "policy period", and the "claim" is reported to us in writing during the "policy period" or any applicable extended reporting period.

    (b)  Property Damage

        We will pay "loss" that an "insured" is legally obligated to pay as a result of a "claim" for "property damage":

        (i)   to property within the boundaries of a "covered location"; and

        (ii)  resulting from a "new pollution event" on, at, or under such "covered location";

provided the "claim" is first made against the "insured" during the "policy period", and the "claim" is reported to us in writing during the "policy period" or any applicable extended reporting period.

Unless covered under any other insuring agreement specifically listed as provided in Item 5 of the Declarations, we shall have no obligation to pay any "loss" attributable to any irritant, contaminant or pollutant that is outside the boundaries of a "covered location".

2. Off-Site

(a) Bodily Injury

We will pay "loss" that an "insured" is legally obligated to pay as a result of a "claim" for "bodily injury":

(i) sustained by a person while beyond the boundaries of a "covered location"; and

(ii) resulting from a "new pollution event" that migrates beyond the boundaries from such "covered location";

provided the "claim" is first made against the "insured" during the "policy period", and the "claim" is reported to us in writing during the "policy period" or any applicable extended reporting period.

(b) Property Damage

We will pay "loss" that an "insured" is legally obligated to pay as a result of a "claim" for "property damage":

(i) to property beyond the boundaries of a "covered location"; and

(ii) resulting from a "new pollution event" that migrates beyond the boundaries from such "covered location";

provided the "claim" is first made against the "insured" during the "policy period", and the "claim" is reported to us in writing during the "policy period" or any applicable extended reporting period.

Unless covered under any other insuring agreement specifically listed as provided in Item 5 of the Declarations, we shall have no obligation to pay any "loss" attributable to any irritant, contaminant or pollutant that is on, at or under a "covered location".

**COVERAGE E:  NATURAL RESOURCE DAMAGES**

1. Existing Pollution Event

We will pay "natural resource damages" that an "insured" is legally obligated to pay as a result of a "claim" for injury to or destruction of "natural resources" resulting from an "existing pollution event" on, at, under or that migrates beyond the boundaries from a "covered location",  provided the "claim" is first made against the "insured" during the "policy period" and the "claim" is reported to us in writing during the "policy period" or any applicable extended reporting period.

2. New Pollution Event

We will pay "natural resource damages" that an "insured" is legally obligated to pay as a result of a "claim" for injury to or destruction of "natural resources" resulting from a "new pollution event" on, at, under or that migrates beyond the boundaries from a "covered location",  provided the "claim" is first made against the "insured" during the "policy period" and the "claim" is  reported to us in writing during the "policy period" or any applicable extended reporting period.

**II. DEFENSE**

We shall have the right and duty to assume the adjustment, defense and settlement of any "claim" to which an insuring agreement specifically listed as provided in Item 5 of the Declarations applies.  "Claim expenses" reduce the applicable Limits of Liability set forth in Item 3 of the Declarations as described in LIMITS OF LIABILITY AND DEDUCTIBLE (Section VI.).

If permitted by applicable law, we shall have the right to appoint one legal counsel to represent and/or defend one or more of the "insureds" who are or may be involved in a "claim" to which this insurance applies.  In the event an "insured" is entitled by law to select independent counsel to represent and/or defend an "insured" at our expense, the attorney's fees and all other litigation expenses we must pay to that counsel are limited to "reasonable legal costs". Furthermore, an "insured" may at any time waive any right it may have to select independent counsel.

Our duty to adjust, defend and settle any and all "claims", pending and future, to which an insuring agreement specifically listed as provided in Item 5 of the Declarations applies, ends when the remaining applicable Limits of Liability have been tendered into court or have been exhausted by payment of "loss", "cleanup costs", "natural resource damages" or "other loss".

## III. DEFINITIONS

**A.** **"Bodily injury"** means any physical injury, sickness, disease, mental anguish or emotional distress sustained by any person, including death resulting therefrom.

**B.** **"Claim"** means a written demand or written notice received by the "insured" alleging liability or responsibility on the part of the "insured". "Claim" does not include a "potential claim" that was reported in a prior policy period as described in CLAIM PROVISIONS (Section VII., B. NOTICE OF POTENTIAL CLAIM), that has become a "claim" during the "policy period".

**C.** **"Claim expenses"** means:

1. Fees charged by an attorney designated by:

   a. Us; or

   b. The "insured" with our prior written consent, provided such fees are "reasonable legal costs"; and

2. All other fees, costs and expenses resulting from the adjustment, defense, settlement and appeal of a "claim" if incurred by us, or by or on behalf of the "insured" with our written consent, including interest on the full amount of any judgment that accrues after entry of the judgment and before we have paid, offered to pay (including an offer of judgment), or deposited in court the amount available for the judgment under the policy.

"Claim expenses" does not include the salaries or expenses of regular employees of ours or the "insured".

**D.** **"Cleanup costs"** means:

1. Reasonable and necessary costs, charges and expenses incurred in the investigation, removal, remediation (including associated monitoring), neutralization or immobilization of contaminated soil, surface water, groundwater, or other contamination including "emergency expense", but excluding any costs, charges or expenses:

   (a) incurred by the "insured" to confirm "discovery" (except as specifically provided for in Section III. D.4. below); or

   (b) to achieve regulatory standards at a "covered location" that are stricter than those necessary for the actual or intended use of such location as set forth in the Application or in the Schedule of Covered Locations endorsement.

2. Where real property or improvements thereto are damaged in the course of performing the activities described in Section III., D.1. above, the lesser of the actual cost to repair, or the actual cash value of, such real property or improvements (as determined based upon the condition of the property or improvements thereto immediately prior to such damage) but excluding any:

   (a) damage caused by the underlying "pollution event"; or

   (b) costs, charges or expenses for improvements or betterments, including, but not limited to, those arising from compliance with any law that was not applicable to (including by operation of any grandfather provision contained in any such law) or not enforced against the property before it was so damaged; and

3. "Claim expenses" in connection with a "claim" for "cleanup costs"; or

4. With respect to "discovery", only those "reasonable legal costs" incurred with our prior written consent.

"Cleanup costs" does not include "loss" for "property damage", "natural resource damages" or any other compensation for injury to or destruction of "natural resources".

**E.** **"Covered location"** means, and is limited to, that property listed in the Schedule of Covered Locations endorsement to the extent therein specifically described, including, without limitation, by street address, lot and block reference, metes and bounds, or by a combination of these or any other substantially equivalent land description methods, current as of the effective date of coverage for any such property.

F. **"Delimitation date"** means the date set forth in Item 6 of the Declarations or in the Schedule of Covered Locations endorsement as applicable.

G. **"Discovered"** or **"discovery"** means discovery by a "responsible insured" of a "pollution event" in amounts or concentrations that exceed allowable levels or concentrations established under "governmental authority".

H. **"Emergency expense"** means costs, charges and expenses incurred to avoid an actual imminent and substantial endangerment to the public health or welfare or the environment.

I. **"Existing pollution event"** means a "pollution event" that commenced on or after the "retroactive date" and prior to the "delimitation date".

J. **"Fungus"** or "fungi" means any:

1. Form or type of mold, mushroom or mildew,

2. Other fungal structure, and

3. Volatile organic compounds, mycotoxins, allergenic proteins or other substances or gases produced by or arising out of any mold, mushroom, mildew, fungal structure or "spores".

K. **"Governmental authority"** means applicable federal, state, or local statutes, regulations, ordinances or orders.

L. **"Insured"** means:

1. The "named insured"; and

2. Any current or former principal, partner, officer, director, employee, member or manager (in the case of a limited liability company) or leased personnel of a "named insured", while acting within the scope of their employment or written agreement with such "named insured".

M. **"Insured contract"** means a contract or agreement listed in a Schedule of Insured Contracts endorsement to this policy, if any.

N. **"Loss"** means:

1. Compensatory damages, whether awarded by a court in a judgment or paid in settlement for:

   (a) "Bodily injury" which may include costs for medical monitoring but only when such medical monitoring is a direct result of physical injury; or

   (b) "Property damage" which may include diminution in property value and stigma damage to property, but only when such diminution in value or stigma damage is a direct result of physical injury to such property; and

2. "Claim expenses" in connection with a "claim" for Section III., N.1.(a) and N.1.(b) above.

"Loss" does not include "other loss".

O. **"Microbial substance"** means any substance that reproduces through release of "spores" or the splitting of cells including but not limited to bacteria, viruses, "fungus(i)", protozoa, chlamydiae, or rickkettsaie, whether or not the substance is living.

P. **"Named insured"** means the person or entity set forth in Item 1 of the Declarations, and any other person or entity listed in a Named Insured endorsement to the policy, if any.

Q. **"Natural resources"** means land, fish, wildlife, biota, air, water, ground water, drinking water supplies, and other such resources belonging to, managed by, held in trust by, appertaining to, or otherwise controlled by the United States, any State or local government, any foreign government, any Indian tribe, or, if such resources are subject to a trust restriction on alienation, any member of an Indian tribe.

R. **"Natural resource damages"** means the sum of:

1. Reasonable and necessary direct costs, including such costs of assessment and replacement required by applicable "governmental authority" to restore the "natural resources" to their baseline condition as they existed prior to the "pollution event";

2. "Use value" of injury to or destruction of "natural resources" between the time of a "pollution event" and restoration of the "natural resources" to the extent injured by the "pollution event"; and

3. "Claim expenses" incurred in connection with a "claim" for injury to or destruction of "natural resources".

"Natural resource damages" does not include "cleanup costs" or "loss" for "property damage".

**S.** **"New pollution event"** means a "pollution event" that first commences on or after the "delimitation date".

**T.** **"Other loss"** has the meaning given in a Choice Coverage endorsement to this policy, if any.   "Other loss" does not include "loss".

**U.** **"Policy period"** means the period set forth in Item 2 of the Declarations or:

1. Any shorter period arising from:

   (a) Cancellation or termination of this policy; or

   (b) With respect to a specific "covered location" the deletion of such "covered location" from this policy by us upon the "named insured's" written request; or

2. As otherwise expressly provided in an endorsement.

**V.** **"Pollution event"** means the discharge, dispersal, release, or escape of any solid, liquid, gaseous or thermal irritant, contaminant or pollutant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals, and waste  into or upon land, or any structure on land, the atmosphere, or any watercourse or body of water including groundwater.

**W.** **"Potential claim"** means a "new pollution event" that an "insured" reasonably expects may result in a "claim".

**X.** **"Property damage"** means:

1. Physical injury to or destruction of tangible property including the resulting loss of use thereof; or

2. Loss of use of tangible property that has not been physically injured or destroyed.

"Loss" for "property damage" does not include "cleanup costs", "natural resource damages" or any other compensation for injury to or destruction of "natural resources".

**Y.** **"Reasonable legal costs"** means attorneys fees, costs, charges, and all other litigation expenses in connection with the defense of a "claim" or negotiation of cleanup standards in connection with "discovery", limited to rates we actually pay to counsel we retain in the ordinary course of business in the defense of similar "claims" or negotiation of similar matters in the community where the "claim" arose or is being defended or the "discovery" was made or is being negotiated; provided that we shall pay such rates and amounts only to the extent that and so long as they are evidenced to be reasonable and necessary attorney fees, costs, charges, and expenses. We may exercise the right to require that such counsel have certain minimum qualifications with respect to legal competency including experience in defending "claims" or negotiating in connection with a "discovery" similar to the one pending against or involving an "insured" and to require such counsel to have errors and omissions insurance coverage.   It is a condition precedent to our obligation to pay any "reasonable legal costs" that an "insured" agree and be responsible for counsel responding to our requests for information regarding the "claim", "discovery" or any other matter in a timely and comprehensive manner.

**Z.** **"Responsible insured"** means a "named insured's" principal, partner, director, officer, member or manager (in the case of a limited liability company), or employee with responsibility for compliance, environmental or legal affairs, or risk management.

**AA.** **"Retroactive date"** means the date set forth in Item 7 of the Declarations, or any applicable endorsement, which is the earliest date that a "pollution event" can commence for coverage to be provided under the policy.   If no entry appears or the words NOT APPLICABLE or N/A appear in the corresponding space of Item 7 of the Declarations then a "retroactive date" shall not apply.

**BB.** **"Spore"** or **"spores"** means any reproductive body produced by or arising out of any "fungus(i)".

**CC.** **"Termination of coverage"** means, for the purpose of EXTENDED REPORTING PERIODS (Section V.), the effective date of:

1. Cancellation or nonrenewal of this policy by the "named insured", or cancellation or nonrenewal of this policy by us other than for fraud or material misrepresentation, change in use of, or operations conducted at, the "covered location", or nonpayment of premium; or

2. Deletion of a "covered location" from this policy by us upon the "named insured's" written request but only with respect to such "covered location".

DD. **"Underground storage tank"** means any tank in existence at a "covered location" as of the inception date of the policy or installed thereafter, including associated underground piping connected thereto, that has at least ten (10) percent of its volume, or any associated piping, below the ground.

EE. **"Use value"** means the value of the "natural resources" to the public attributable to the direct use of the services provided by such "natural resources", provided, however, that no aesthetic or historic use shall be considered in the determination of such value.

## IV. EXCLUSIONS

This insurance does not apply to "claims", "cleanup costs", "loss", "natural resource damages" or "other loss" based upon, arising out of, or to the extent comprised of:

**A. Asbestos and Lead**

Any asbestos-containing material or lead-based paint which are or were part of any fixtures, buildings or improvements on, at or under the "covered location". However, this exclusion does not apply to "cleanup costs" to the extent attributable to asbestos-containing materials or lead-based paint in the soil or groundwater.

**B. Contractual Liability**

Any liability assumed by an "insured" under any contract or agreement. However, this exclusion does not apply to liability:

1. For "cleanup costs", "loss", "natural resource damages" or "other loss" that would have attached to an "insured" by operation of law in the absence of such contract or agreement; or

2. That is specifically assumed in an "insured contract" but only to the extent that any indemnity or contractual liability assumed thereby is consistent with liability expressly covered under, and not otherwise excluded from coverage by, this policy.

**C. Financial Assurance**

Any obligation to demonstrate financial assurance or financial responsibility, or to meet any financial assurance or financial responsibility requirements under any federal, state or local law. However, this exclusion does not apply to any such obligation to the extent specifically provided in an endorsement to this policy, if any.

**D. Fines, Penalties and Punitive Damages**

Any fines, penalties, or punitive, exemplary or multiple damages.

**E. Known Pollution Event**

Any "pollution event" known to a "responsible insured" prior to the effective date of the applicable insuring agreement listed as provided in Item 5 of the Declarations of this policy, unless such "pollution event" was disclosed to us in writing and listed on a Known Pollution Event Schedule and/or Disclosed Documents endorsement and provided that such "pollution event" is not otherwise excluded under the policy.

**F. Known Underground Storage Tanks**

Any "underground storage tank", whether active, inactive or abandoned, known to any "responsible insured" unless listed on a Scheduled Underground Storage Tank endorsement to this policy, if any.

**G. Maintenance, Upgrades, Improvements or Installations**

Any costs, charges or expenses for maintenance, upgrade or improvement of, or installation of any control to, any property or processes on, at, within or under a "covered location" even if such maintenance, upgrade, improvement or installation is required:

1. By "governmental authority"; or

2. As a result of "cleanup costs", "loss", "natural resource damages" or "other loss" otherwise covered under the policy.

**H. Microbial Substance**

Any "microbial substance".

**I. Naturally Occurring Substance**

Any naturally occurring substance in its unaltered form, or altered solely through naturally occurring processes or phenomena.  However, this exclusion does not apply to the extent that an "insured" demonstrates that the naturally occurring substance:

1. Exceeds amounts or concentrations naturally present on, at, under or surrounding the "covered location", and

2. Was the result of a discharge, dispersal, release or escape of such naturally occurring substance.

**J. Owned Property**

"Property damage" to property that is owned or rented by or leased to, the "insured".

**K. Related Persons and Organizations**

Any "claim" made:

1. By an "insured" against any other "insured"; or

2. Against an "insured" by an organization or individual:

   a. That wholly or partially controls, owns, operates or manages an "insured"; or

   b. That is wholly or partially controlled, owned, operated or managed by the "insured".

**L. War**

1. War, including undeclared or civil war;

2. Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

3. Insurrection, rebellion, revolution or usurped power, or action taken by any government, sovereign or other authority in hindering or defending against any of these.

**M. Wrongful Acts or Deliberate Non-Compliance**

Any:

1. Knowingly wrongful act, or

2. Deliberate non-compliance with any "governmental authority", administrative complaint, notice of violation, notice letter, or instruction of any governmental agency or body,

by or at the direction of a "responsible insured".

**N. Workers' Compensation and Injury as a Consequence of Employment**

1. Any obligation of the "insured" that is owed, in whole or in part, under a workers compensation, disability benefits, unemployment compensation or any similar law;

2. Injury to any "insured" if such injury occurs during and in the course of employment;

3. Injury to the spouse, child, parent, brother or sister of any "insured" as a consequence of such "insured's" employment; or

4. Any obligation of an "insured" for indemnity or contribution to another because of "loss" or "other loss" arising out of such injury in the course of employment.

**V. EXTENDED REPORTING PERIODS**

**A. RENEWAL OF COVERAGE**

Provided that the "named insured" has renewed this policy, the "named insured" shall be entitled to a provisional extended reporting period of sixty (60) days (at no additional charge) within which to report:

1. "Discovery" during the final thirty (30) days of the "policy period", such provisional extended reporting period to commence upon the date of "discovery"; or

2. A "claim" that is first made against the "insured" during the final thirty (30) days of the "policy period", such provisional extended reporting period to commence upon the date the "claim" is made against the "insured".

Any "discovery" or "claim" reported to us in writing during the provisional extended reporting period shall be deemed to have been made during the "policy period" and shall be subject to the remaining Limits of Liability for the "policy period", if any.

## B. TERMINATION OF COVERAGE

Only with respect to "claims" seeking payment of "cleanup costs", "loss", "natural resource damages" or "other loss" to which an insuring agreement specifically listed as provided in Item 5 of the Declarations applies, the "named insured" shall be entitled to:

1. An automatic extended reporting period of sixty (60) days (at no additional charge) upon "termination of coverage".

2. Purchase an optional extended reporting period of up to three (3) years in duration commencing when the automatic extended reporting period ends, provided the "named insured":

    (a) makes a written request to us for such optional extended reporting period within sixty (60) days after "termination of coverage"; and

    (b) pays the additional premium when due.  The charge for such optional extended reported shall not exceed one hundred percent (100%) of the total premium for the policy as set forth in Item 8 of the Declarations plus any additional premium described in an endorsement to the policy, if any.

    At the commencement of any such optional extended reporting period, the entire premium shall be considered earned, and in the event the optional extended reporting period is terminated before its expiration for any reason, we shall not return any portion of the premium paid.  If such additional premium is paid when due, the optional extended reporting period may not be canceled by us, provided that all other terms and conditions of the policy are met.

3. Any "claim" first made against the "insured" and reported to us in writing during the automatic extended reporting period or, as applicable, the optional extended reporting period shall be deemed to have been made and reported on the last day of the "policy period" and coverage shall apply under this policy provided that:

    (a) The "pollution event" commenced on or after the "retroactive date" and before the end of the "policy period"; and

    (b) The "named insured" has not purchased any other insurance to replace coverage provided by this policy; and

    (c) The "claim" is otherwise covered under the terms and conditions of this policy; and

    (d) The "cleanup costs", "loss", "natural resource damages"  or "other loss" resulting from such "claim"  will be subject to the remaining Limits of Liability for this policy, if any; and

    (e) Notwithstanding CONDITIONS (Section VIII.), OTHER INSURANCE, and Section V., B.3 (b), above, the insurance provided for a "claim" first reported during the automatic extended reporting period or the optional extended reporting period is excess over any other valid and collectible insurance available under policies in force during the automatic or optional extended reporting periods.

## VI. LIMITS OF LIABILITY AND DEDUCTIBLE

### A. EACH POLLUTION EVENT LIMIT

Subject to the Aggregate Policy Limit, the most we will pay for all "cleanup costs", "loss", "natural resource damages" or "other loss" arising out of the same, continuous or repeated "pollution event" or series of related "pollution events" is the Each Pollution Event Limit set forth in Item 3 of the Declarations.

We shall not be obligated to pay any "cleanup costs", "loss", "natural resource damages"  or "other loss", or undertake or continue the defense of any "claim", pending or future, after the Each Pollution Event Limit has been tendered into court or exhausted by payments for "cleanup costs", "loss", "natural resource damages" or "other loss".

**B. AGGREGATE POLICY LIMIT OF LIABILITY**

The most we will pay for all "cleanup costs", "loss" and "other loss" to which this insurance applies is the Aggregate Policy Limit set forth in Item 3 of the Declarations.

**C. SUB-LIMIT OF LIABILITY/AGGREGATE SUB-LIMIT**

If a sub-limit of liability is shown in Item 5 of the Declarations corresponding with a specific insuring agreement or in an endorsement to this policy, then, subject to the Each Pollution Event Limit and Aggregate Policy Limit set forth in Item 3 of the Declarations and the corresponding Aggregate Sub-Limit, such sub-limit of liability is the most we will pay for all "cleanup costs", "loss", "natural resource damages" or "other loss" as applicable, arising from the same, continuous or repeated "pollution event" or series of related "pollution events" to which the specific insuring agreement or endorsement applies. The corresponding Aggregate Sub-Limit is the most we will pay for all "cleanup costs", "loss", "natural resource damages" or "other loss", as applicable, under the terms of the insuring agreement or endorsement to which that Aggregate Sub-Limit corresponds.

The sub-limit of liability is not in addition to and will erode the Each Pollution Event Limit and the Aggregate Policy Limit set forth in Item 3 of the Declarations. If the Each Pollution Event Limit and/or Aggregate Policy Limit has been reduced to an amount which is less than the sub-limit of liability corresponding with a specific insuring agreement or in an endorsement, the lesser of the remaining Aggregate Policy Limit or remaining Each Pollution Event Limit is the most that will be available for payment of "cleanup costs", "loss", "natural resource damages" or "other loss" as applicable, to which to which that insuring agreement or endorsement applies.

**D. DEDUCTIBLE**

We will pay "cleanup costs", "loss", "natural resource damages" or "other loss" to which this insurance applies in excess of the Deductible set forth in Item 4 or Item 5 (corresponding with an insuring agreement specifically listed as provided) of the Declarations or as set forth in an endorsement to this policy, if any. The Deductible is the "named insured's" obligation and applies to all "cleanup costs", "loss", "natural resource damages", and "other loss" arising from the same, continuous or repeated "pollution event" or series of related "pollution events". The Deductible does not erode the Limits of Liability. We may advance payment for "cleanup costs", "loss", "natural resource damages" or "other loss" within the Deductible. The "named insured" shall promptly reimburse us for advancing any element of such "cleanup costs", "loss", "natural resource damages" or "other loss" paid by us within the Deductible.

If an "insured" agrees with us to use non-binding mediation to resolve a "claim" for which a defense has been provided and such "claim" is resolved thereby, the Deductible shall be reduced by 50% for that "claim" only, subject to a maximum reduction of $25,000.

**E. MULTIPLE INSUREDS OR CLAIMANTS, MULTIPLE COVERAGES, MULTIPLE POLICY PERIODS, CLAIMS ARISING FROM POTENTIAL CLAIMS, AND CLAIMS REPORTED IN THE EXTENDED REPORTING PERIOD**

**1. MULTIPLE INSUREDS OR CLAIMANTS**

The inclusion of more than one "insured" in the "discovery" of a "pollution event" or in the making of a "claim" regarding the same "pollution event" shall not increase the Limits of Liability set forth in Item 3 of the Declarations. Nor shall the "discovery" of a "pollution event" or the making of "claims" by more than one person or organization increase the Limits of Liability stated in the Declarations.

**2. MULTIPLE COVERAGES**

If the same, continuous or repeated "pollution event" or series of related "pollution events" is covered under more than one insuring agreement specifically listed as provided in Item 5 of the Declarations, only a single Each Pollution Event Limit shall apply to all "cleanup costs", "loss", "natural resource damages" or "other loss" arising from such "pollution event" or series of related "pollution events". Furthermore, if more than one Deductible is applicable, only the highest Deductible shall apply to all "cleanup costs", "loss", "natural resource damages", or "other loss" arising from such "pollution event" or series of related "pollution events".

**3. MULTIPLE POLICY PERIODS**

If we or an affiliate have issued pollution liability coverage to the "named insured" for the "covered location" in one or more consecutive and uninterrupted policy periods, and:

(a) a "pollution event" or series of related "pollution events" that is first reported to us in accordance with all of the terms and conditions of this policy takes place over the "policy period" and one or more subsequent policy periods; and/or

(b) a "claim" for "cleanup costs", "loss", "natural resource damages" or "other loss" is first made against the "insured" during the "policy period" and reported to us in accordance with all of the terms and conditions of this policy; and/or

(c) a "pollution event" is first "discovered" during the "policy period" and reported to us in accordance with all of the terms and conditions of this policy;

all "claims", "cleanup costs", "loss", "natural resource damages", and "other loss" arising out of the same, continuous or repeated "pollution event" or series of related "pollution events" whether reported during the "policy period" or during a subsequent policy period shall be subject to the Limits of Liability and Deductible corresponding with this policy.

**4. CLAIMS ARISING FROM POTENTIAL CLAIMS**

A "potential claim" which subsequently becomes a "claim" shall be subject to the Limits of Liability corresponding to the policy period in effect when the "potential claim" was reported to us in accordance with CLAIMS PROVISIONS (Section VII., Paragraph B. NOTICE OF POTENTIAL CLAIM).

**5. CLAIMS REPORTED IN THE EXTENDED REPORTING PERIOD**

The extended reporting periods shall not serve to increase or reinstate the Limits of Liability set forth in Item 3 of the Declarations. The Limits of Liability shall be those that remain at the end of the "policy period".

## VII. CLAIM PROVISIONS

### A. NOTICE OF DISCOVERY OR CLAIM

In the event of a "discovery" or "claim", the "insured" shall give written notice to us as soon as possible containing particulars sufficient to identify an "insured" and reasonably obtainable information including:

1. The time, place, location, and a detailed explanation of the "pollution event" including, as applicable, the date of "discovery" or the date the "insured" received the "claim";

2. The names and addresses of any injured parties and available witnesses;

3. Any and all investigative or engineering reports, data or information about the "pollution event", "cleanup costs", "loss", "natural resource damages" or "other loss"; and

4. Any and all other relevant information about the "pollution event", "claim", "cleanup costs", "loss", "natural resource damages" or "other loss".

If a "claim" is made against an "insured", the "insured" shall immediately forward to us every demand, notice, summons, complaint, order or other process or legal papers received by an "insured" or its representatives.

### B. NOTICE OF POTENTIAL CLAIM

If during the "policy period" the "insured" first becomes aware of a "potential claim", the "insured" may provide written notice to us containing particulars sufficient to identify an "insured" and providing all of the following information:

1. The cause of the "new pollution event" if known or suspected, including any potential cause;

2. The time, place, location, and details of the "new pollution event" including how and when the "insured" first became aware of the "potential claim";

3. The names and addresses of any actually or potentially injured parties or damaged property, and available witnesses, if and to the extent reasonably available;

4. Any and all investigative or engineering reports, data or information about the "potential claim", and any other information containing "cleanup costs", "loss", "natural resource damages" or "other loss" that may result; and

5. Any other relevant information about the "potential claim", "cleanup costs", "loss", "natural resource damages" or "other loss".

If all of the foregoing information is provided to us in writing during the "policy period" and the "potential claim" subsequently becomes a "claim" made against the "insured" and reported to us during any renewal policy, any applicable extended reporting period, or within five (5) years after the later of the end of any such policy or extended reporting period, such "claim" shall be deemed, for the purposes of this insurance, to have been made on the date on which written notice of the "potential claim" was first received by us and shall be subject to the terms, conditions and Limits of Liability applicable to the policy in effect as of such date.

We may elect to investigate any "potential claim" which is reported to us. Any costs associated with the investigation of a "potential claim" prior to a "claim" being made will not be considered "claim expenses". These costs shall not be applied towards reducing the applicable Deductible, and are in addition to the Limits of Liability and shall be borne by us.

## C. NOTICE TO US

All "discovery", "claims" and "potential claims" shall be reported to us in writing at the address shown in Item 9 of the Declarations.

## D. SETTLEMENT

The "insured" shall not settle any "claim" without our written consent. If we recommend a settlement, the "insured" shall have the opportunity to concur, such concurrence not to be unreasonably withheld or denied. If we recommend a settlement that is acceptable to a claimant for a total amount in excess of the applicable Deductible and the "insured" refuses to concur with such settlement, then our liability for "cleanup costs", "loss", "natural resource damages", and "other loss" shall be limited to that portion of the recommended settlement and the "claim expenses" incurred as of the date of the "insured's" refusal, which exceed the Deductible and fall within the Limit of Liability.

## E. VOLUNTARY PAYMENTS, ADMISSIONS OR ASSUMPTIONS OF LIABILITY

No costs, charges or expenses shall be incurred or paid or liability admitted or assumed by an "insured" without our written consent, which shall not be unreasonably withheld, delayed or denied.

Notwithstanding the foregoing, an "insured" may incur such "emergency expense" as reasonably necessary to prevent or mitigate "cleanup costs", "loss", "natural resource damages" or "other loss", provided the "Insured" provides written notice to us within ninety-six (96) hours after any portion of such "emergency expense" is incurred.

# VIII. CONDITIONS

## A. APPRAISAL

If we and the "insured" disagree as to the value of real property or improvements thereto in connection with "cleanup costs" (Section III. DEFINITIONS, paragraph D.2) or the amount of "other loss" for Coverages H, I, and J (only if specifically listed as provided in Item 5 of the Declarations), either party may make written demand for an appraisal of the value of the property or the amount of "cleanup costs" or "other loss". In this event, each party will select a competent and impartial appraiser. The two appraisers will select an umpire. If they cannot agree, either may request that selection be made by a judge of a court having jurisdiction. The appraisers will state separately the value of the property and amount of "cleanup costs" or "other loss". If they fail to agree, they will submit their differences to the umpire. A decision agreed to by any two will be binding. Each party will:

1. Pay its chosen appraiser; and

2. Bear the other expenses of the appraisal and umpire equally.

If there is an appraisal, we retain our right to deny coverage for "cleanup costs" or "other loss" as applicable.

## B. ASSIGNMENT

Assignment of interest under this policy shall not bind us unless and until our consent is endorsed thereon, which consent shall not be unreasonably withheld, delayed or denied.

## C. AUDIT AND INSPECTION

We shall be permitted upon reasonable prior notice to audit the "insured's" books and records at any time during the "policy period" and within three (3) years after the final termination of this policy, as far as they relate to the subject matter of the policy and any "cleanup costs", "loss", "natural resource damages" or "other loss" for which

payment may be made under the policy. We shall also be permitted, upon reasonable prior notice, to inspect, sample and monitor on a continuing basis any "covered location" and operations conducted thereon. Neither our right to make inspections, sample and monitor, nor the actual undertaking thereof, nor any report thereon shall constitute an undertaking, on behalf of us or others, to determine or warrant that a "covered location" or operation is safe, healthful or conforms to acceptable engineering practice or is in compliance with any law, rule or regulation. We will not manage or exercise control over any "covered location" or operation.

**D. BANKRUPTCY**

Bankruptcy or insolvency of an "insured" will not relieve us of our obligations to an "insured" under this policy nor increase our obligations including, but not limited to, those with respect to any Deductible amount. However, if we have advanced any payment for "cleanup costs", "loss", "natural resource damages" or "other loss" within the Deductible pursuant to LIMITS OF LIABILITY AND DEDUCTIBLE (VI., paragraph D), then any such payments to the extent not reimbursed to us shall reduce the Limits of Liability. Furthermore, this condition shall not impair our ability to assert any defense on behalf of an "insured".

**E. CANCELLATION**

This policy may be canceled by the "named insured" by surrender to us or by mailing to us written notice stating when thereafter cancellation shall be effective.

This policy may be canceled by us by mailing to the "named insured" at the address set forth in Item 1 of the Declarations, a notice stating when thereafter such cancellation shall be effective. We may cancel this policy for the following reasons only:

1. Fraud or material misrepresentation;

2. Any "insured's" material failure to comply with the terms, conditions or contractual obligations under this policy including failure to pay the Deductible when due;

3. A material change in use of, or operations conducted at, any "covered location"; or

4. Nonpayment of premium.

The mailing of notice as aforesaid shall be sufficient proof of notice. The time of surrender or the effective date and hour of cancellation stated in the notice shall become the end of the "policy period". Delivery of such written notice either by the "named insured" or by us shall be equivalent to mailing. Notice of pending cancellation will be provided not less than: (a) sixty (60) days prior to the effective date of cancellation for any "insured's" failure to comply with the terms, conditions or contractual obligations under this policy including failure to pay the Deductible when due, or change in use of, or operations conducted at the "covered location" that materially increases risks to which this insurance applies; (b) thirty (30) days prior to the effective date of cancellation for fraud or material misrepresentation; and (c) ten (10) days prior to the effective date of cancellation for nonpayment of premium.

If we cancel, subject to any minimum earned premium that may apply, the return premium will be calculated on a pro rata basis. If the "named insured" cancels, subject to any minimum earned premium that may apply, there may be no return premium or the return premium may be less than pro rata.

**F. CHANGES**

The terms of this policy shall not be waived or changed, except by endorsement issued to form a part of this policy.

**G. CHOICE OF LAW**

In the event an "insured" and we dispute the meaning, interpretation or operation of any term, condition, definition or provision of this policy resulting in litigation, arbitration or other form of dispute resolution, the "insured" agrees with us that the law of the State of New York shall apply without giving effect to any conflicts or choice of law principles. In the event the "insured" agrees with us to resolve the dispute by arbitration, any such arbitration shall be in accordance with the Commercial Arbitration Rules of the American Arbitration Association in effect when such agreement is reached.

**H. COOPERATION**

The "insured" agrees with us to assist and cooperate in the fulfillment of the policy's terms, including the investigation, adjustment, defense or settlement of any "claim" or in connection with the "discovery" of any

"pollution event". Such cooperation may include participating at meetings; testifying at hearings, depositions and trials; and securing evidence. The "insured" shall be allowed $250 per day but no more than $5,000 in total allowable expenses for compensation to its principals, partners, officers, directors, employees or members or managers for personally attending any such meetings, hearings or depositions at our request. These allowable expenses shall not reduce the applicable Limits of Liability and Deductible set forth in Item 3 of the Declarations.

In addition, all "insureds" shall cooperate with us in the pursuit of any coverage that may be available from other insurers and/or under other insurance policies for "claim expenses", "cleanup costs", "loss", "natural resource damages" or "other loss", covered under this policy.

## I. DECLARATIONS

By acceptance of this policy, the "named insured" agrees that the statements in the Declarations, and those made during the application process and in the Application are its agreements and representations, that this policy is issued in reliance upon the truth of such statements and representations and that this policy embodies all agreements existing between the "named insured" and us relating to this insurance.

## J. HEADINGS

The descriptions in the headings of this policy are solely for convenience and form no part of the policy terms and conditions.

## K. OTHER INSURANCE

1. The insurance provided under this policy is primary insurance, except as otherwise provided in connection with any extended reporting period, or where stated in an endorsement to apply in excess of, or contingent upon the absence of, other insurance. When this insurance is primary and the "insured" has other insurance which is stated to be applicable to the "cleanup costs", "loss", "natural resource damages" or "other loss" on an excess basis, the amount of our liability under this policy shall not be reduced by the existence of such excess insurance.

2. When this insurance is excess, we shall have no duty to defend the "insured" against any "claim" if any other insurer has a duty to defend the "insured" against such "claim". If no other insurer defends, we will undertake to do so, but we will be entitled to the insured's rights against all those other insurers. When this insurance is excess over other insurance, we will pay only our share of the amount of "cleanup costs", "loss", "natural resource damages" or "other loss" if any, that exceeds the sum of:

   a. The total amount that all such other insurance would pay for the "cleanup costs", "loss", "natural resource damages" or "other loss" in the absence of this insurance; and

   b. The total of all deductible and self-insured amounts under all that other insurance.

3. When both this insurance and other insurance apply to the "cleanup costs", "loss", "natural resource damages" or "other loss" on the same basis, whether primary, excess or contingent, we shall not be liable under this policy for a greater proportion of the "cleanup costs", "natural resource damages" " or "other loss" than the amount set forth in Item 3 of the Declarations or the amount resulting from the following contribution methods, whichever is lesser:

   a. Contribution by equal shares - Under this approach each insurer contributes equal amounts until it has paid its applicable limit of insurance or none of the "cleanup costs", "loss", "natural resource damages" or "other loss" remains, whichever occurs first; or

   b. Contribution by limits - each insurer's share is based on the ratio of its applicable limit of insurance to the total applicable limits of insurance of all insurers.

## L. SEPARATION OF INSUREDS

Except with respect to the Limits of Liability and any rights and duties specifically assigned to the "named insured" set forth in Item 1 of the Declarations, this insurance applies:

1. As if each "named insured" were the only "named insured"; and

2. Separately to each "insured" against whom a "claim" is made.

Misrepresentation, concealment, breach of condition or violation of any duty under this policy by one "insured" shall not prejudice the interest of coverage for another "insured" under this policy, except where an "insured" is a

parent, subsidiary, or affiliate of the "named insured" set forth in Item 1 of the Declarations.  For purposes of the immediately preceding sentence, an "affiliate" is any company or entity that is in control of, controlled by, or under common control with the "named insured".  "Control" (including the terms  "controlled by" and "under common control with") as used herein includes, but is not limited to, the possession, directly or indirectly and whether acting alone or in conjunction with others, of the authority to direct or cause the direction of the management or policies of a company or entity.  A voting interest of twenty five percent (25%) or more creates a rebuttable presumption of control.

**M. SOLE AGENT**

The "named insured" set forth in Item 1 of the Declarations shall act on behalf of all "insureds" for all purposes, including but not limited to the payment of Deductible, payment or return of premium, receipt and acceptance of any endorsement issued to form a part of this policy, giving and receiving notice of cancellation or nonrenewal, and the exercise of the rights provided in EXTENDED REPORTING PERIODS (Section V.)

**N. SUBROGATION**

In the event of any payment under this policy, we shall be subrogated to all of an "insured's" rights of recovery against any person or organization, including any rights to contribution from any other insurer.  An "insured" shall execute and deliver instruments and papers and do whatever else is necessary to secure such rights.   No "insured" shall do anything to impair, prejudice or waive such rights.

Any recovery obtained through subrogation, after expenses incurred in such subrogation are deducted by the party bearing the expense, shall be applied proportionately to the "insured" and us for actual payments as a result of judgment, settlement or defense of a "claim", or "cleanup costs" with respect to the "discovery" of a "pollution event".

**O. THIRD PARTY BENEFICIARIES**

No third party beneficiaries are created as a result of this policy.  This policy creates no rights by or on behalf of any third parties.  We have no obligation under this policy to any third party whatsoever and specifically we have no obligation to make payment to anyone except the "insured".

# Z Choice Coverage G: Transportation of Materials


**ZURICH**®

| Policy No. | Eff. Date of Pol. | Exp. Date of Pol. | Eff. Date of End. | Producer | Add'l Prem. | Return Prem. |
|---|---|---|---|---|---|---|
| EPC 5944550 02 | 11/23/2014 | 11/23/2019 | 11/23/2014 | 23801000 | --- | --- |

**Named Insured and Mailing Address:**

KEN'S FOODS, INC.
1 D'ANGELO DRIVE
MARLBOROUGH, MA 01752--3066

**Producer:**

HAYS INS BROKERAGE SERVICES OF NEW
ENGLAND, LLC
133 FEDERAL STREET
BOSTON, MA 02110-1703

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

This endorsement modifies insurance provided under the following:

**Choice Pollution Liability - Claims Made and Reported Coverage**

In consideration of the payment of premium and the Deductible by the "named insured" and in reliance upon the statements made in the application process and in the Application all of which are made a part hereof, we agree, subject to all the terms, exclusions, and conditions of the policy, that the following changes are made to the policy solely with respect to coverage provided by this endorsement:

I.   INSURING AGREEMENTS (Section I.) is amended to include the following BUT ONLY IF AND TO THE EXTENT COVERAGE G IS SPECIFICALLY LISTED AS PROVIDED IN ITEM 5 OF THE DECLARATIONS

  **COVERAGE G:  TRANSPORTATION OF MATERIALS**

  1.  Bodily Injury

  We will pay "loss" that an "insured" is legally obligated to pay as a result of a "claim" for "bodily injury" sustained by a "third party" resulting from a "pollution event" that happens in the course of "transportation", provided the "claim" is first made against the "insured" during the "policy period" and the "claim" is reported to us in writing during the "policy period" or any applicable extended reporting period.

  2.  Property Damage

  We will pay "loss" that an "insured" is legally obligated to pay as a result of a "claim" for "property damage" to "third party" property resulting from a "pollution event" that happens in the course of "transportation", provided the "claim" is first made against the "insured" during the "policy period" and the "claim" is reported to us in writing during the "policy period" or any applicable extended reporting period.

  3.  Cleanup Costs

  We will pay "cleanup costs" that an "insured" is legally obligated to pay as a result of a "claim" resulting from a "pollution event" that happens in the course of "transportation", provided the "claim" is first made against the "insured" during the "policy period", and further provided the "claim" is reported to us in writing during the "policy period" or any applicable extended reporting period.

II.  The following are added to DEFINITIONS (Section III.) solely with respect to coverage provided by this endorsement:

  **"Automobile"** means a land motor vehicle, trailer or semi-trailer designated for travel on public roads including any machinery or apparatus attached thereto.

  **"Carrier"** means any person or entity, including an "insured", that is properly licensed to "transport" "materials" by "automobile", aircraft, "vessel" or rolling stock.

**"Material"** means an "insured's" goods, products or waste, including oil, petroleum, pesticide products, and materials to be recycled, reconditioned or reclaimed.

**"Third party"** means any person or entity other than a "carrier" or an employee, contract employee or lease personnel of such "carrier".

**"Transportation" or "transport"** means the movement of "material" commencing with the loading of such "material" to the physical possession of the "carrier" onto an "automobile", aircraft, "vessel" or rolling stock and ends when the unloading of the "materials" in the physical possession of the "carrier" from the "automobile", aircraft, "vessel" or rolling stock is complete.

**"Vessel"** means any watercraft used or capable of being used on water, whether self-propelled or otherwise, and includes barges and tugs.

III. The following is added to EXCLUSIONS (Section IV.) solely with respect to coverage provided by this endorsement:

**Erroneous Delivery**

The erroneous delivery of:

1. any "materials" into the wrong receptacle or to the wrong address; or

2. the wrong type of "material".

IV. CONDITIONS (Section VIII.), Condition K., Other Insurance, is replaced with the following solely with respect to coverage provided by this endorsement:

K. **OTHER INSURANCE** - When other insurance is available to the "insured" for "loss" or "cleanup costs" covered under the terms and conditions of this policy and this endorsement, our obligation to the "insured" shall be as follows:

1. The coverage provided by this policy and this endorsement shall apply as excess insurance over any other valid and collectible insurance, be it primary or excess. Notwithstanding the foregoing, this excess insurance shall operate as primary insurance only in the event of the receivership, insolvency, or inability to pay of any insurer with respect to both the duty to indemnify and the duty to defend but shall not apply as primary insurance to the "insured" while acting as a self-insured for any coverage.

2. Where this insurance is excess insurance, we will pay only our share of the amount of "loss" or "cleanup costs", if any, that exceeds the total amount of all such valid and collectible insurance.

Upon our request, an "insured" shall promptly provide us with copies of all policies potentially applicable to liability covered by this endorsement.

**ALL OTHER TERMS, EXCLUSIONS, AND CONDITIONS OF THE POLICY APPLY AND REMAIN UNCHANGED.**

# Z Choice Coverage H: Suspension of Operations – Loss of Business Income



| Policy No. | Eff. Date of Pol. | Exp. Date of Pol. | Eff. Date of End. | Producer | Add'l Prem. | Return Prem. |
|---|---|---|---|---|---|---|
| EPC 5944550 02 | 11/23/2014 | 11/23/2019 | 11/23/2014 | 23801000 | --- | --- |

**Named Insured and Mailing Address:**

KEN'S FOODS, INC.
1 D'ANGELO DRIVE
MARLBOROUGH, MA 01752--3066

**Producer:**

HAYS INS BROKERAGE SERVICES OF NEW
ENGLAND, LLC
133 FEDERAL STREET
BOSTON, MA 02110-1703

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

This endorsement modifies insurance provided under the following:

**Z Choice Pollution Liability - Claims Made and Reported Coverage**

| Covered Location | Retroactive Date | Delimitation Date |
|---|---|---|
| SEE SCHEDULE OF COVERED LOCATIONS ENDORSEMENT # STF-EPC-150-A CW  (08/12) | | |

In consideration of the payment of premium and the Deductible by the "named insured" and in reliance upon the statements made in the application process and in the Application all of which are made a part hereof, we agree, subject to all the terms, exclusions, and conditions of the policy, that the following modifications shall apply to the policy solely with respect to coverage provided by this endorsement and only for the "covered locations" scheduled above.

I.   INSURING AGREEMENTS (Section I.), is amended to include the following BUT ONLY IF AND TO THE EXTENT COVERAGE H IS SPECIFICALLY LISTED AS PROVIDED IN ITEM 5 OF THE DECLARATIONS:

**COVERAGE H:  SUSPENSION OF OPERATIONS**

1.   <u>Existing Pollution Event</u>

We will pay "other loss" to the extent resulting from an "existing pollution event" on, at, or under a "covered location" which is covered under Section I. INSURING AGREEMENTS, Coverage A.1(a) or (b), if that "existing pollution event":

(a)  Is first "discovered" during the "policy period"; and

(b)  Directly causes a "suspension of operations", at such "covered location" during the "policy period";

provided the "suspension of operations" is reported to us in writing during the "policy period" or any applicable extended reporting period.

2.   <u>New Pollution Event</u>

We will pay "other loss" to the extent resulting from a "new pollution event" on, at, or under a "covered location" which is covered under Section I. INSURING AGREEMENTS, Coverage C.1(a) or (b), if that "new pollution event":

(a)  Is first "discovered" during the "policy period"; and

(b)  Directly causes a "suspension of operations" at such "covered location" during the "policy period";

provided the "suspension of operations" is reported to us in writing during the "policy period" or any applicable extended reporting period.

II.  The following are added to DEFINITIONS (Section III) solely with respect to coverage provided by this endorsement:

**"Loss of business income"** means:

1.  The sum of:

   (i)  Total net sales value of goods that could not be produced during the "period of indemnity"; and

   (ii)  Total net sales of merchandise that could not be sold during the "period of indemnity"; and

   (iii)  Other income derived from "operations" of the business;

2.  Less the:

   (i)  Actual cost of raw stock from which production is derived; and

   (ii)  Actual cost of supplies which constitute the materials consumed directly in conversion of raw stock into "finished stock" or in supplying the services sold by the "insured"; and

   (iii)  Sale price of merchandise sold, including the actual cost of related packaging materials; and

   (iv)  Services purchased from outsiders (not employees of the "insured") for resale which do not continue under contract; and

   (v)  Remaining salvage value of any property obtained for temporary use during the "suspension of operations" that remains in use after the "operations" have resumed; and

3.  In determining "loss of business income", we will consider:

   (i)  the income experience before the "suspension of operations" and the probable future experience had no "suspension of operations" occurred, taking account of seasonal patterns, trends, variations, and/or special circumstances which would have affected the "operations" if the "suspension of operations" had not occurred;

   (ii)  continuation of normal charges and expenses, including payroll, to the extent necessary to resume the "operations" with the same quality of service which existed immediately preceding the "suspension of operations";

   (iii)  suspension or reduction of any obligation for labor costs, charges and expenses during the "period of indemnity" and liquidated damages and any other compensation the "named insured" is entitled to receive, whether collectible or not;

   (iv)  appropriate deductions to the extent the "named insured" can resume "operations", in whole or in part, by using damaged or undamaged property (including stock, raw, in process or "finished stock") at the "covered location" or elsewhere; and

   (v)  whether the "suspension of operations" results in part from any other cause other than a "pollution event" which is covered under the policy and this endorsement.  In such case, our obligation is limited to that portion of "loss of business income" we reasonably deem attributable to the "pollution event" provided coverage under the policy.

**"Cleanup"** means those activities necessary to investigate, remove, remediate, neutralize or immobilize contaminated soil, surface water, groundwater, or other contamination to the extent required by "governmental authority".

**"Finished stock"** means stock which the "insured" has manufactured and also includes whiskey and other alcoholic and non-alcoholic products being aged.  "Finished stock" does not include stock the "insured" has manufactured which is held for sale on the premises of any "covered location".

**"Operations"** means the normal and customary operations of the "insured" as indicated in the Application or Business Income Calculator Worksheet.

**"Other loss"** means "loss of business income" and "reasonable and necessary expenses", in excess of the Deductible, sustained by the "named insured" during the "period of indemnity".

**"Period of indemnity"** means the period of time commencing at the conclusion of the "waiting period" and extending until the earlier of:

1. The expiration of the corresponding period of days in Item 3 of the Declarations as stated below in this endorsement; or

2. The date on which the "cleanup" is complete and the "named insured" can resume "operations", excluding any period of time attributable to:

   a. the enforcement of any ordinance or law regulating the construction, use or repair, or requiring the demolition, of any property; or

   b. work stoppage, boycott or strike by employees of the "insured" or others; or

3. Exhaustion of the applicable limits of insurance

The "period of indemnity" shall not be limited by the expiration of the policy.

**"Reasonable and necessary expenses"** means expenses necessarily and reasonably incurred to reduce "loss of business income" to the extent such expenses do not exceed the amount of "loss of business income" that otherwise would have been payable.

**"Suspension of operations"** means the necessary partial or complete suspension of "operations" at the "covered location" as a direct result of a "cleanup" required by "governmental authority".

**"Waiting period"** means the corresponding number of days in Item 3 Limits of the Declarations as stated below in this endorsement, beginning with the date the "named insured" provides written notice to us of a "suspension of operations".

III. Item 3., Limits of Liability of the Declarations is amended to add the following solely with respect to coverage provided by this endorsement:

| **Item 3: Limits of Liability:** | 1825 | Days Period of Indemnity |
| --- | --- | --- |
| | 4 | Days Waiting Period |

IV. The following is added to CLAIM PROVISIONS (Section VI.) solely with respect to coverage provided by this endorsement:

**NOTICE OF SUSPENSION**

In the event of a "suspension of operations" the "named insured" shall:

1. Give written notice to us as soon as possible, including a description of how, when and where the "suspension of operations" occurred and an itemization of "other loss"; and

2. Keep written records of all expenditures, and copies of all bills, invoices, deeds, leases, contracts and any other sources of information relevant to "other loss" sustained in connection with the "suspension of operations"; and

3. Send us a signed, sworn proof of "loss of business income", containing the information we request to investigate the "suspension of operations", within sixty (60) days after our request, and allow us to examine the "named insured" and any other "insured" under oath and at such times as we may reasonably require, about any matter relating to "loss of business income", including such "named insured's" or other "insured's" books and records. In the event of an examination, the "named insured's" or other "insured's" answers must be signed.

V. **CONDITIONS** (Section VIII.), Condition K., **OTHER INSURANCE** is replaced with the following solely with respect to coverage provided by this endorsement:

K. **OTHER INSURANCE** – When other insurance is available to the "insured" for "other loss" under the terms and conditions of this policy and this endorsement, our obligation to the "insured" shall be as follows:

1. The coverage provided by this policy and this endorsement shall apply as excess insurance over any other valid and collectible insurance, be it primary or excess. Notwithstanding the foregoing, this excess insurance shall operate as primary insurance as a result of the receivership, insolvency, or inability to pay of any insurer with respect to both the duty to indemnify and the duty to defend but shall not apply to the "insured" while acting as a self-insured for any coverage.

2. Where this insurance is excess insurance, we will pay only our share of the amount of "other loss", if any, that exceeds the total amount of all such valid and collectible insurance.

Upon our request, an "insured" shall promptly provide us with copies of all policies potentially applicable to liability covered by this endorsement.

**VI.** The following are added to **CONDITIONS** (Section VIII) solely with respect to coverage provided by this endorsement:

**MITIGATION**

In the event of a "suspension of operations", the "insured" must act in good faith to:

1. Take steps to mitigate "actual loss of business income; and

2. Diligently execute and complete "cleanup" to the extent such "cleanup" is within the "insured's" control; and

3. Resume "operations" at the "covered location" as soon as practicable.

**NO SUSPENSION OF OPERATIONS**

It is a condition precedent to coverage that there is no "suspension of operations" at the "covered location" at the time of "discovery" of a "pollution event" to which this endorsement applies.

**RECONCILIATION**

In the event we pay "other loss" to which this endorsement applies, we shall have the right but not the obligation to conduct an audit of the "named insured's" records to confirm the amount of "loss of business income" and "reasonable and necessary expenses" as defined by this endorsement. In the event that covered "other loss" as determined by the audit is less than or exceeds the sum paid by us for such "other loss", the difference between the two amounts shall be paid by or to us as applicable.

**ALL OTHER TERMS, EXCLUSIONS, AND CONDITIONS OF THE POLICY APPLY AND REMAIN UNCHANGED.**

# Z Choice Coverage K: Fungus and/or Spores: Third Party Bodily Injury, Property Damage and Cleanup Costs and, if and as applicable, Suspension of Operations, Tenant Occupancy or Delay in Construction



**ZURICH**®

| Policy No. | Eff. Date of Pol. | Exp. Date of Pol. | Eff. Date of End. | Producer | Add'l Prem. | Return Prem. |
|---|---|---|---|---|---|---|
| EPC 5944550 02 | 11/23/2014 | 11/23/2019 | 11/23/2014 | 23801000 | --- | --- |

**Named Insured and Mailing Address:**

KEN'S FOODS, INC.
1 D'ANGELO DRIVE
MARLBOROUGH, MA 01752--3066

**Producer:**

HAYS INS BROKERAGE SERVICES OF NEW
ENGLAND, LLC
133 FEDERAL STREET
BOSTON, MA 02110-1703

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

This endorsement modifies insurance provided under the following:

**Z Choice™ Pollution Liability – Claims Made and Reported Coverage**

| Covered Location | Retroactive Date |
|---|---|
| SEE SCHEDULE OF COVERED LOCATIONS ENDORSEMENT # STF-EPC-150-A CW  (08/12) | |

In consideration of the payment of premium and the Deductible by the "named insured" and in reliance upon the statements made in the application process and in the Application all of which are made a part hereof, we agree, subject to all the terms, exclusions, and conditions of the policy, that the following modifications shall apply to the policy solely with respect to the "covered locations" scheduled above.

I.  INSURING AGREEMENTS (Section I.) is amended to include the following BUT ONLY IF AND TO THE EXTENT COVERAGE K IS SPECIFICALLY LISTED AS PROVIDED IN ITEM 5 OF THE DECLARATIONS:

**COVERAGE K:  FUNGUS AND/OR SPORES**

1.  <u>Bodily Injury</u>

    We will pay "other loss" that an "insured" is legally obligated to pay as a result of a "claim" for "bodily injury" resulting from a "pollution event" at, on, under or migrating beyond the boundaries from a "covered location", provided the "claim" is first made against the "insured" during the "policy period", and the "claim" is reported to us in writing during the "policy period" or any applicable extended reporting period.

2.  <u>Property Damage</u>

    We will pay "other loss" that an "insured" is legally obligated to pay as a result of a "claim" for "property damage" resulting from a "pollution event" at, on, under or migrating beyond the boundaries from a "covered location", provided the "claim" is first made against the "insured" during the "policy period", and the "claim" is reported to us in writing during the "policy period" or any applicable extended reporting period.

3. <u>Third Party Liability - Cleanup Costs</u>

We will pay "cleanup costs" that an "insured" is legally obligated to pay as a result of a "claim" resulting from a "pollution event" at, on, under or migrating beyond the boundaries from a "covered location", provided the "claim" is first made against the "insured" during the "policy period", and reported to us in writing during the "policy period" or any applicable extended reporting period.

**II.** DEFINITIONS (Section III.), "cleanup costs", "pollution event", and "responsible insured" are replaced with the following solely with respect to coverage provided by this endorsement:

**D. "Cleanup costs"** means:

1. Reasonable and necessary costs, charges, and expenses incurred in the investigation, removal, remediation, neutralization or immobilization of "fungus(i)" and/or "spore(s)", but excluding any costs, charges or expenses incurred by the "insured" to confirm a "pollution event"; and

2. Where real property or improvements thereto are damaged in the course of performing the activities described in Section III., D.1. above, the lesser of the actual cost to repair, or the actual cash value of such real property or improvements (as determined based upon the condition of the property or improvements thereto immediately prior to such damage) but excluding any:

   (a) Damage caused by the underlying "pollution event"; or

   (b) Costs, charges or expenses for improvements or betterments, including, but not limited to, those arising from compliance with any law that was not applicable to (including by operation of any grandfather provision contained in any such law) or not enforced against the property before it was so damaged.

   "Cleanup costs" does not include "loss" for "property damage" or "natural resource damages" or any other compensation for injury to or destruction of "natural resources".

**V. "Pollution event"** means the discharge, dispersal, release or escape of any solid, liquid, gaseous or thermal irritant, contaminant or pollutant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals, waste, "fungus(i)" and/or "spores" into or upon land, or any structure on land, the atmosphere, or any watercourse or body of water including groundwater, that first commences on or after the "retroactive date".

**Z. "Responsible insured"** means an "insured's" principal, partner, director, officer, member or manager (in the case of a limited liability company), or employee with responsibility for compliance, environmental or legal affairs, risk management, or for building maintenance at a "covered location".

**III.** For the purpose of Coverages H (Suspension of Operations), I (Suspension of Tenant Occupancy), and J (Delay in Construction) IF AND ONLY TO THE EXTENT SUCH COVERAGE(S) IS/ARE SPECIFICALLY LISTED AS PROVIDED IN ITEM 5 OF THE DECLARATIONS, the term "pollution event" shall be deemed to include the amendment set forth in paragraph II.V, above.

**IV.** The following are added to DEFINITIONS (Section III.) solely with respect to coverage provided by this endorsement:

**"Other loss"** means:

1. Compensatory damages, whether awarded by a court in a judgment or paid in settlement for:

   (a) "Bodily injury", including the costs for medical monitoring but only when such medical monitoring is a direct result of physical injury; or

   (b) "Property damage" including diminution in property value and stigma damage to property, but only when such diminution in value or stigma damage is a direct result of physical injury to such property; and

2. "Claim expenses" in connection with a "claim" for "bodily injury" and/or "property damage" above or in connection with a "claim" for "cleanup costs" under Section I. INSURING AGREEMENTS, Coverage K.3.

**IV.** EXCLUSIONS (Section IV.) paragraph H. Microbial Substance and I. Naturally Occurring Substance are replaced with the following solely with respect to coverage provided by this endorsement:

**H. Microbial Substance**

Any "microbial substance". However, this exclusion does not apply to "other loss" or "cleanup costs" resulting from a "pollution event" to which this endorsement applies.

I. **Naturally Occurring Substance**

Any naturally occurring substance in its unaltered form, or altered solely through naturally occurring processes or phenomena.  However, this exclusion does not apply to:

1. The extent that an "insured" demonstrates that the naturally occurring substance:

   a. Exceeds amounts or concentrations naturally present on, at, under or surrounding the "covered location"; and

   b. Was the result of a discharge, dispersal, release or escape of such naturally occurring substance; or

2. Any "pollution event" to which the coverage provided under this endorsement applies.

V. EXCLUSIONS (Section IV.) is amended to add the following solely with respect to coverage provided by this endorsement:

**Abatement or Remediation Operations**

Any "pollution event" caused by, arising out of, or resulting from abatement or remediation operations for:

1. "fungus(i)" and/or "spores"; or

2. asbestos performed during the "policy period".

**Mitigation Procedures**

The "insured's" failure to adhere to its inspection and maintenance protocols, entitled N/A and dated N/A specific to the assessment and remediation of "fungus(i)", "spore(s)" at or in any structure upon the "covered location".

VI. CONDITIONS, (Section VIII.), Condition K., Other Insurance is replaced with the following solely with respect to coverage provided by this endorsement:

K. **OTHER INSURANCE** - When other insurance is available to the "insured" for "other loss" and "cleanup costs" covered under the terms and conditions of this policy and this endorsement, our obligation to the "insured" shall be as follows:

1. The coverage provided by this endorsement shall apply as excess insurance over any other valid and collectible insurance, be it primary or excess.  Notwithstanding the foregoing, this excess insurance shall operate as primary insurance as a result of the receivership, insolvency, or inability to pay of any insurer with respect to both the duty to indemnify and the duty to defend but shall not apply as primary insurance to the "insured" while acting as a self-insured for any coverage.

2. Where this insurance is excess insurance, we will pay only our share of the amount of "other loss" including "claim expense" and/or "cleanup costs", if any, that exceeds the total amount of all such valid and collectible insurance.

Upon our request an "insured" shall promptly provide us with copies of all policies potentially applicable to liability covered by this endorsement.

**ALL OTHER TERMS, EXCLUSIONS, AND CONDITIONS OF THE POLICY APPLY AND REMAIN UNCHANGED.**

# Additional Named Insured


**ZURICH**®

| Policy No. | Eff. Date of Pol. | Exp. Date of Pol. | Eff. Date of End. | Producer | Add'l Prem. | Return Prem. |
|---|---|---|---|---|---|---|
| EPC 5944550 02 | 11/23/2014 | 11/23/2019 | 11/23/2014 | 23801000 | --- | --- |

**Named Insured and Mailing Address:**

KEN'S FOODS, INC.
1 D'ANGELO DRIVE
MARLBOROUGH, MA 01752--3066

**Producer:**

HAYS INS BROKERAGE SERVICES OF NEW
ENGLAND, LLC
133 FEDERAL STREET
BOSTON, MA 02110-1703

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

This endorsement modifies insurance provided under the following:

**Z Choice Pollution Liability - Claims Made and Reported Coverage**

In consideration of the payment of premium and the Deductible by the "named insured" and in reliance upon the statements made in the application process and in the Application all of which are made a part hereof, we agree, subject to all the terms, exclusions and conditions of the policy, that the person(s) or entity(s) listed below is(are) a "named insured" pursuant to DEFINITIONS, Section III., paragraph P. Named Insured:

<div align="center">Named Insured:</div>

| Name: | Address: | Retroactive Date: | Delimitation Date: |
|---|---|---|---|
| SOLELY WITH RESPECT TO LIABILITY ARISING FROM THE COVERED LOCATION(S): | | | |
| KEN'S FOODS, INC. | 1 D' ANGELO DRIVE, MARLBOROUGH, MA 01752 | 11/23/1999 | 11/23/2008 |
| MIP REALTY TRUST | 1 D' ANGELO DRIVE, MARLBOROUGH, MA 01752 | 11/23/1999 | 11/23/2008 |
| MIDGA, LLC | 1 D' ANGELO DRIVE, MARLBOROUGH, MA 01752 | 11/23/1999 | 11/23/2008 |
| BLU D, LLC | 1 D' ANGELO DRIVE, MARLBOROUGH, MA 01752 | 11/23/1999 | 11/23/2008 |
| KEN'S FOODS MASSACHUSETTS BUSINESS TRUST | 1 D' ANGELO DRIVE, MARLBOROUGH, MA 01752 | 11/23/1999 | 11/23/2008 |
| SWEET BABY RAYS | 1 D' ANGELO DRIVE, MARLBOROUGH, MA 01752 | 11/23/1999 | 11/23/2008 |
| CCHS, LLC | 1 D' ANGELO DRIVE, MARLBOROUGH, MA 01752 | 11/23/1999 | 11/23/2008 |

**ALL OTHER TERMS, EXCLUSIONS, AND CONDITIONS OF THE POLICY APPLY AND REMAIN UNCHANGED.**

# Amendment of Cancellation



| Policy No. | Eff. Date of Pol. | Exp. Date of Pol. | Eff. Date of End. | Producer | Add'l Prem. | Return Prem. |
|---|---|---|---|---|---|---|
| EPC 5944550 02 | 11/23/2014 | 11/23/2019 | 11/23/2014 | 23801000 | --- | --- |

**Named Insured and Mailing Address:**

KEN'S FOODS, INC.
1 D'ANGELO DRIVE
MARLBOROUGH, MA 01752--3066

**Producer:**

HAYS INS BROKERAGE SERVICES OF NEW
ENGLAND, LLC
133 FEDERAL STREET
BOSTON, MA 02110-1703

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

This endorsement modifies insurance provided under the following:

**Z Choice Pollution Liability Insurance – Claims Made and Reported Coverage**

In consideration of the payment of premium and the Deductible by the "named insured" and in reliance upon the statements made in the application process and in the Application all of which are made a part hereof, we agree, subject to all the terms, exclusions and conditions of the policy, that CONDITIONS (Section VIII), Condition E., is deleted and replaced with the following:

**E. CANCELLATION**

This policy may be canceled by the "named insured" by surrender to us or by mailing to us written notice stating when thereafter cancellation shall be effective.

This policy may be canceled by us by mailing to the "named insured" at the address set out in Item 1 of the Declarations, a notice stating when thereafter such cancellation shall be effective.  We may cancel this policy for the following reasons only:

1. Fraud or material misrepresentation;

2. Any "insured's" material failure to comply with the terms, conditions or contractual obligations under this policy including failure to pay the Deductible when due;

3. A material change in use of or operations conducted at any "covered location"; or

4. Nonpayment of premium.

The mailing of notice as aforesaid shall be sufficient proof of notice.  The time of surrender or the effective date and hour of cancellation stated in the notice shall become the end of the "policy period".  Delivery of such written notice either by the "named insured" or by us shall be equivalent to mailing.  Notice of pending cancellation will be provided not less than: (a) NINETY (90) days for any "insured's" failure to comply with the terms, conditions or contractual obligations under this policy including failure to pay the Deductible when due, or change in use of, or operations conducted at the "covered location" that materially increases risks to which this insurance applies; (b) thirty (30) days for fraud or material misrepresentation; and (c) ten (10) days for nonpayment of premium.

If we cancel, subject to any minimum earned premium that may apply, the return premium will be calculated on a pro rata basis.  If the "named insured" cancels, subject to any minimum earned premium that may apply, there may be no return premium or the return premium may be less than pro rata.

**ALL OTHER TERMS, EXCLUSIONS, AND CONDITIONS OF THE POLICY APPLY AND REMAIN UNCHANGED.**

# Choice of Law



| Policy No. | Eff. Date of Pol. | Exp. Date of Pol. | Eff. Date of End. | Producer | Add'l Prem. | Return Prem. |
|---|---|---|---|---|---|---|
| EPC 5944550 02 | 11/23/2014 | 11/23/2019 | 11/23/2014 | 23801000 | --- | --- |

**Named Insured and Mailing Address:**

KEN'S FOODS, INC.
1 D'ANGELO DRIVE
MARLBOROUGH, MA 01752--3066

**Producer:**

HAYS INS BROKERAGE SERVICES OF NEW
ENGLAND, LLC
133 FEDERAL STREET
BOSTON, MA 02110-1703

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

This endorsement modifies insurance provided under the following:

**Z Choice Pollution Liability- Claims Made and Reported Coverage**

In consideration of the payment of premium and the Deductible by the "named insured" and in reliance upon the statements made in the application process and in the Application all of which are made a part hereof, we agree, subject to all the terms, exclusions and conditions of the policy, that CONDITIONS (Section VIII.), Condition G. is deleted in its entirety.

**ALL OTHER TERMS, EXCLUSIONS, AND CONDITIONS OF THE POLICY APPLY AND REMAIN UNCHANGED.**

# Extended Reporting Period



| Policy No. | Eff. Date of Pol. | Exp. Date of Pol. | Eff. Date of End. | Producer | Add'l Prem. | Return Prem. |
|---|---|---|---|---|---|---|
| EPC 5944550 02 | 11/23/2014 | 11/23/2019 | 11/23/2014 | 23801000 | --- | --- |

**Named Insured and Mailing Address:**

KEN'S FOODS, INC.
1 D'ANGELO DRIVE
MARLBOROUGH, MA 01752--3066

**Producer:**

HAYS INS BROKERAGE SERVICES OF NEW
ENGLAND, LLC
133 FEDERAL STREET
BOSTON, MA 02110-1703

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

This endorsement modifies insurance provided under the following:

**Z Choice Pollution Liability - Claims Made and Reported Coverage**

In consideration of the payment of premium and the Deductible by the "named insured" and in reliance upon the statements made in the application process and in the Application all of which are made a part hereof, we agree, subject to all the terms, exclusions, and conditions of the policy, that we will extend the time for reporting any "claim" first made against the "insured" after "termination of coverage."  This period of extension shall be effective from 12:01 am on 11/23/2019 to 12:01 am on 02/21/2020.

We have the right to cancel this endorsement according to the policy terms if the "named insured" fails to pay any premium when due.

**ALL OTHER TERMS, EXCLUSIONS, AND CONDITIONS OF THE POLICY APPLY AND REMAIN UNCHANGED.**

# Nuclear Exclusion



**ZURICH**®

| Policy No. | Eff. Date of Pol. | Exp. Date of Pol. | Eff. Date of End. | Producer | Add'l Prem. | Return Prem. |
|---|---|---|---|---|---|---|
| EPC 5944550 02 | 11/23/2014 | 11/23/2019 | 11/23/2014 | 23801000 | --- | --- |

**Named Insured and Mailing Address:**

KEN'S FOODS, INC.
1 D'ANGELO DRIVE
MARLBOROUGH, MA 01752--3066

**Producer:**

HAYS INS BROKERAGE SERVICES OF NEW
ENGLAND, LLC
133 FEDERAL STREET
BOSTON, MA 02110-1703

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY**.

This endorsement modifies insurance provided under the following:

**Z Choice Pollution Liability - Claims Made and Reported Coverage**

In consideration of the payment of premium and the Deductible by the "named insured" and in reliance upon the statements made in the application process and in the Application all of which are made a part hereof, we agree, subject to all the terms, exclusions, and conditions of the policy, that the following is added to EXCLUSIONS (Section IV.):

**Nuclear**

1. Any coverage for "cleanup costs," or "loss", "natural resource damages" or "other loss" and  including any applicable "claim expenses:"

    a. With respect to which an "insured" under the policy is also an "insured" under a nuclear energy liability policy issued by Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters, Nuclear Insurance Association of Canada or any of their successors, or would be an "insured" under any such policy but for its termination upon exhaustion of its limit of liability; or

    b. Resulting from the "hazardous properties" of "nuclear material" and with respect to which (a) any person or organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954, or any law amendatory thereof, or (b) the "insured" is, or had this policy not been issued would be, entitled to indemnity from the United States of America, or any agency thereof, under any agreement entered into by the United States of America, or any agency thereof, with any person or organization.

2. Under any liability coverage, "cleanup costs," "loss", "natural resource damages" or "other loss" including any applicable "claim expenses" resulting from "hazardous properties" of "nuclear material," if:

    a. The "nuclear material" (i) is at any "nuclear facility" owned by or operated by or on behalf of, an "insured" or (ii) has been discharged or dispersed therefrom;

    b. The "nuclear material" is contained in "spent fuel," or "waste" at any time possessed, handled, used, processed, stored, transported or disposed of, by or on behalf of an "insured"; or

    c. The "cleanup costs," "loss", "bodily injury" or "property damage" arises out of the furnishing by an "insured" of services, materials, parts or equipment in connection with the planning, construction, maintenance, operation or use of any "nuclear facility," but if such facility is located within the United States of America, its territories or possessions or Canada, this exclusion (3) applies only to "property damage" to such "nuclear facility" and any property thereat.

As used in this exclusion:

**"Hazardous properties"** includes radioactive, toxic or explosive properties.

**"Nuclear material"** means "source material," "special nuclear material" or "by-product material."

**"Source material," "special nuclear material,"** and **"by-product material"** have the meanings given them in the Atomic Energy act of 1954 or in any law amendatory thereof.

**"Spent fuel"** means any fuel element or fuel component, solid or liquid, which has been used or exposed to radiation in a "nuclear reactor."

**"Waste"** means any waste matter (a) containing "by-product material" other than the tailings or wastes produced by the extraction or concentration of uranium or thorium from any ore processed primarily for its "source material" content, and (b) resulting from the operation by any person or organization of any "nuclear facility" included under the first two paragraphs of the definition of "nuclear facility."

**"Nuclear facility"** means:

a. Any "nuclear reactor";

b. Any equipment or device designed or used for (1) separating the isotopes of uranium or plutonium, (2) processing or utilizing "spent fuel," or (3) handling, processing or packaging "waste";

c. Any equipment or device used for the processing, fabricating or alloying of "special nuclear material" if at any time the total amount of such material in the custody of the "insured" at the premises where such equipment or device is located consists of or contains more than 25 grams of plutonium or uranium 233 or any combination thereof, or more than 250 grams of uranium 235;

d. Any structure, basin, excavation, premises or place prepared or used for the storage or disposal of "waste";

and includes the site on which any of the foregoing is located, all operations conducted on such site and all premises used for such operations.

**"Nuclear reactor"** means any apparatus designed or used to sustain nuclear fission in a self-supporting chain reaction or to contain a critical mass of fissionable material. "Property damage" for the purposes of this endorsement, includes all forms of radioactive contamination of property.

**ALL OTHER TERMS, EXCLUSIONS, AND CONDITIONS OF THE POLICY APPLY AND REMAIN UNCHANGED.**

# Schedule of Covered Locations



**ZURICH**®

| Policy No. | Eff. Date of Pol. | Exp. Date of Pol. | Eff. Date of End. | Producer | Add'l Prem. | Return Prem. |
|---|---|---|---|---|---|---|
| EPC 5944550 02 | 11/23/2014 | 11/23/2019 | 11/23/2014 | 23801000 | --- | --- |

**Named Insured and Mailing Address:**

KEN'S FOODS, INC.
1 D'ANGELO DRIVE
MARLBOROUGH, MA 01752--3066

**Producer:**

HAYS INS BROKERAGE SERVICES OF NEW
ENGLAND, LLC
133 FEDERAL STREET
BOSTON, MA 02110-1703

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

This endorsement modifies insurance provided under the following:

**Z Choice Pollution Liability - Claims Made and Reported Coverage**

In consideration of the payment of premium and the Deductible by the "named insured" and in reliance upon the statements made in the application process and in the Application all of which are made a part hereof, we agree, subject to all the terms, exclusions, and conditions of the policy, that the following are "covered location(s)" for purposes of Section III. Definitions, paragraph E.:

| Covered Location Description | Use Description | Retroactive Date | Delimitation Date |
|---|---|---|---|
| 1 D'ANGELO DRIVE MARLBOROUGH, MA | MANUFACTURE OF SALAD DRESSING & SAUCES | N/A | 11/23/2008 |
| 155 KING MILL ROAD, MCDONOUGH, GA | MANUFACTURE OF SALAD DRESSING & SAUCES | N/A | 11/23/2008 |
| 8925 KEN'S CT, LAS VEGAS, NV | MANUFACTURE OF SALAD DRESSING & SAUCES | N/A | 11/23/2008 |

**ALL OTHER TERMS, EXCLUSIONS, AND CONDITIONS OF THE POLICY APPLY AND REMAIN UNCHANGED.**

# Scheduled Underground Storage Tank
**Not For Evidence Of Financial Responsibility**


**ZURICH**®

| Policy No. | Eff. Date of Pol. | Exp. Date of Pol. | Eff. Date of End. | Producer | Add'l Prem. | Return Prem. |
|---|---|---|---|---|---|---|
| EPC 5944550 02 | 11/23/2014 | 11/23/2019 | 11/23/2014 | 23801000 | --- | --- |

**Named Insured and Mailing Address:**

KEN'S FOODS, INC.
1 D'ANGELO DRIVE
MARLBOROUGH, MA 01752--3066

**Producer:**

HAYS INS BROKERAGE SERVICES OF NEW
ENGLAND, LLC
133 FEDERAL STREET
BOSTON, MA 02110-1703

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

This endorsement modifies insurance provided under the following:

**Z Choice Pollution Liability - Claims Made and Reported Coverage**
In consideration of the payment of premium and the Deductible by the "named insured" and in reliance upon the statements made in the application process and in the Application all of which are made a part hereof, we agree, subject to all the terms, exclusions, and conditions of the policy, that pursuant to EXCLUSIONS (Section IV.), Exclusion F, coverage is provided for the following "underground storage tanks:"

| Covered Location | Tank ID | Size | Contents | Retroactive Date |
|---|---|---|---|---|
| 1 D'ANGELO DRIVE MARLBOROUGH, MA | N/A | 6,000 GALLONS | WASTEWATER | 11/23/2005 |
| 8925 KEN'S CT LAS VEGAS, NV | N/A | 4,000 GALLONS | WASTEWATER | 11/23/2005 |
| 155 KING MILL ROAD, MCDONOUGH, GA | N/A | 5,000 GALLONS | WASTEWATER | 11/23/2005 |

It is further understood and agreed that the following modifications shall apply to the policy with respect to the coverage provided by this endorsement only:

I.   **EXCLUSIONS** (Section IV.) is amended to include the following:

**Contents**

Any costs, charges or expenses to remove, replace or recycle the contents of any "underground storage tank."

II.  **CONDITIONS** (Section VIII.) is amended to include the following:

**NOTICE OF UNDERGROUND STORAGE TANK REMOVAL**

The "named insured" shall provide prior written notice to us at least forty-eight (48) hours in advance of any plan to remove or replace all or any part of an "underground storage tank" scheduled in this endorsement.

**ALL OTHER TERMS, EXCLUSIONS, AND CONDITIONS OF THE POLICY APPLY AND REMAIN UNCHANGED.**

# Broad Named Insured



| Policy No. | Eff. Date of Pol. | Exp. Date of Pol. | Eff. Date of End. | Producer | Add'l Prem. | Return Prem. |
|---|---|---|---|---|---|---|
| EPC 5944550 02 | 11/23/2014 | 11/23/2019 | 11/23/2014 | 23801000 | --- | --- |

**Named Insured and Mailing Address:**

KEN'S FOODS, INC.
1 D'ANGELO DRIVE
MARLBOROUGH, MA 01752--3066

**Producer:**

HAYS INS BROKERAGE SERVICES OF NEW
ENGLAND, LLC
133 FEDERAL STREET
BOSTON, MA 02110-1703

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

This endorsement modifies insurance provided under the following:

**Z Choice Pollution Liability - Claims Made and Reported Coverage**

In consideration of the payment of  premium and the Deductible by the "named insured" and in reliance upon the statements made in the application process and in the Application all of which are made a part hereof, we agree, subject to all the terms, exclusions and conditions of the policy, that DEFINITIONS, Section III., paragraph P. "named insured" is deleted and replaced with the following:

**P.   "Named insured"** means:

1. The person or entity set forth in Item 1 of the Declarations;

2. Any company in which the person or entity listed in Item 1 of the Declarations has an ownership interest of more than 50% during the "policy period", and

3. Any other person or entity listed in a Named Insured endorsement to the policy, if any.

**ALL OTHER TERMS, EXCLUSIONS, AND CONDITIONS OF THE POLICY APPLY AND REMAIN UNCHANGED.**



# Definition of Governmental Authority
# (Including Licensed Site Professional – Massachusetts)

| Policy No. | Eff. Date of Pol. | Exp. Date of Pol. | Eff. Date of End. | Producer | Add'l Prem. | Return Prem. |
|---|---|---|---|---|---|---|
| EPC 5944550 02 | 11/23/2014 | 11/23/2019 | 11/23/2014 | 23801000 | --- | --- |

**Named Insured and Mailing Address:**

KEN'S FOODS, INC.
1 D'ANGELO DRIVE
MARLBOROUGH, MA 01752--3066

**Producer:**

HAYS INS BROKERAGE SERVICES OF NEW
ENGLAND, LLC
133 FEDERAL STREET
BOSTON, MA 02110-1703

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

This endorsement modifies insurance provided under the following:

**Z Choice Pollution Liability - Claims Made and Reported Coverage**

In consideration of the payment of premium and the Deductible by the "named insured" and in reliance upon the statements made in the application process and in the Application all of which are made a part hereof, we agree, subject to all the terms, exclusions, and conditions of the policy, that:

I.  DEFINITIONS (Section III.), paragraph K. "governmental authority" is deleted in its entirety and replaced with the following:

K.  **"Governmental authority"** means applicable federal, state, or local statutes, regulations, ordinances or orders, including, but not limited to the Massachusetts General Law Chapter 21E and the Licensed Site Professional system of the Massachusetts Contingency Plan, as embodied in 3310 CMR 40.000 governing licensure of Licensed Site Professionals (hereinafter any such professional to be referred to as an "LSP"), provided however, that in no event, shall "governmental authority" include:

1.  a "named insured";

2.  any person who is an "insured" or who is an employee, director or officer of a "named insured's" parent, subsidiary or affiliate company; or

3.  any person who has any investment or ownership interest in the "covered location" or "non-owned location" prior to or during the "policy period".

II.  CONDITIONS (Section VIII.) is amended to include the following:

**INDEPENDENT REVIEW OF DETERMINATION BY LSP**

As a condition precedent to providing coverage under this policy for any "discovery" or "claim" with respect to a "covered location" for which an LSP has a contractual relationship with an "insured", including, but not limited to, as a remediation contractor, we shall have the right, at our sole expense, to retain an independent LSP, if, based upon investigative or engineering reports, data or information submitted to us by the "insured" or based upon our investigation of the "discovery" or "claim", we reasonably believe that the existence of such contractual relationship has affected the "cleanup costs" or "loss".

**ALL OTHER TERMS, EXCLUSIONS, AND CONDITIONS OF THE POLICY APPLY AND REMAIN UNCHANGED.**

# Fines & Penalties Endorsement



| Policy No. | Eff. Date of Pol. | Exp. Date of Pol. | Eff. Date of End. | Producer | Add'l Prem. | Return Prem. |
|---|---|---|---|---|---|---|
| EPC 5944550 02 | 11/23/2014 | 11/23/2019 | 11/23/2014 | 23801000 | --- | --- |

**Named Insured and Mailing Address:**

KEN'S FOODS, INC.
1 D'ANGELO DRIVE
MARLBOROUGH, MA 01752--3066

**Producer:**

HAYS INS BROKERAGE SERVICES OF NEW
ENGLAND, LLC
133 FEDERAL STREET
BOSTON, MA 02110-1703

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

This endorsement modifies insurance provided under the following:

**Z Choice Pollution Liability - Claims Made and Reported Coverage**

In consideration of the payment of premium and the Deductible by the "named insured" and in reliance upon the statements made in the application process and in the Application all of which are made a part hereof, we agree, subject to all the terms, exclusions, and conditions of the policy, that EXCLUSIONS (Section IV.) paragraph D. Fines, Penalties and Punitive Damages is deleted and replaced as follows:

**D.  Fines, Penalties and Punitive Damages**

Any fines, penalties, or punitive, exemplary or multiple damages.  However, this exclusion does not apply to civil fines or penalties, or to punitive, exemplary or multiple damages to the extent such damages:

1.  Are insurable by law, and

2.  Result from a "claim" wherein we are obligated to pay "loss" under the terms and conditions of the policy.

**ALL OTHER TERMS, EXCLUSIONS, AND CONDITIONS OF THE POLICY APPLY AND REMAIN UNCHANGED.**

# Z Choice Coverage F:  Non-Owned Disposal Sites (Blanket)



**ZURICH**®

| Policy No. | Eff. Date of Pol. | Exp. Date of Pol. | Eff. Date of End. | Producer | Add'l Prem. | Return Prem. |
|---|---|---|---|---|---|---|
| EPC 5944550 02 | 11/23/2014 | 11/23/2019 | 11/23/2014 | 23801000 | --- | --- |

**Named Insured and Mailing Address:**

KEN'S FOODS, INC.
1 D'ANGELO DRIVE
MARLBOROUGH, MA 01752--3066

**Producer:**

HAYS INS BROKERAGE SERVICES OF NEW
ENGLAND, LLC
133 FEDERAL STREET
BOSTON, MA 02110-1703

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

This endorsement modifies insurance provided under the following:

**Z Choice® Pollution Liability- Claims Made and Reported Coverage**

In consideration of the payment of premium and the Deductible by the "named insured" and in reliance upon the statements made in the application process and In the Application all of which are made a part hereof, we agree, subject to all the terms, exclusions and conditions of the policy, that the following changes are made to the policy solely with respect to coverage under this endorsement and solely with respect to waste and/or materials generated at the following "covered locations" and subject to any applicable "retroactive date":

| Covered Location | Retroactive Date |
|---|---|
| SEE SCHEDULE OF COVERED LOCATIONS ENDORSEMENT # STF-EPC-150-A CW  (08/12) | N/A |

I.    INSURING AGREEMENTS (Section I.), is amended to include the following BUT ONLY IF AND TO THE EXTENT COVERAGE F IS SPECIFICALLY LISTED AS PROVIDED IN ITEM 5 OF THE DECLARATIONS

**COVERAGE F:  NON-OWNED LOCATIONS**

1.    <u>On-Site</u>

(a)  Bodily Injury

We will pay "loss" that an "insured" is legally obligated to pay as a result of a "claim" for "bodily injury":

(i)   sustained by a "third party" while within the boundaries of a "non-owned location"; and

(ii)  resulting from a "pollution event" on, at or under such "non-owned location";

provided the "claim" is first made against the "insured" during the "policy period" and the "claim" is reported to us in writing during the "policy period" or any applicable extended reporting period.

(b)  Property Damage

We will pay "loss" that an "insured" is legally obligated to pay as a result of a "claim" for "property damage":

(i)   to "third party" property within the boundaries of a "non-owned location"; and

(ii)  resulting from a "pollution event" on, at or under such "non-owned location";

provided the "claim" is first made against the "insured" during the "policy period", and the "claim" is reported to us in writing during the "policy period" or any applicable extended reporting period.

(c) Third Party Cleanup Costs

We will pay "cleanup costs" that an "insured" is legally obligated to pay as a result of a "claim" resulting from a "pollution event" on, at, or under a "non-owned location", provided the "claim" is first made against the "insured" during the "policy period" and the "claim" is reported to us in writing during the "policy period" or any applicable extended reporting period.

Unless covered under any other insuring agreement specifically listed as provided in Item 5 of the Declarations, we shall have no obligation to pay any "loss" or "cleanup costs" attributable to any irritant, contaminant or pollutant that is outside the boundaries of a "non-owned location".

2. Off-Site

(a) Bodily Injury

We will pay "loss" that an "insured" is legally obligated to pay as a result of a "claim" for "bodily injury":

(i)   sustained by a "third party" while beyond the boundaries of a "non-owned location"; and

(ii)  resulting from a "pollution event" that migrates beyond the boundaries from such "non-owned location";

provided the "claim" is first made against the "insured" during the "policy period", and the "claim" is reported to us in writing during the "policy period" or any applicable extended reporting period.

(b) Property Damage

We will pay "loss" that an "insured" is legally obligated to pay as a result of a "claim" for "property damage":

(i)   to "third party" property beyond the boundaries of a "non-owned location"; and

(ii)  resulting from a "pollution event" that is migrating beyond the boundaries from such "non-owned location";

provided the "claim" is first made against the "insured" during the "policy period", and the "claim" is reported to us in writing during the "policy period" or any applicable extended reporting period.

(c) Third Party Cleanup Costs

We will pay "cleanup costs" that an "insured" is legally obligated to pay as a result of a "claim" resulting from a "pollution event" that migrates beyond the boundaries from a "non-owned location" provided the "claim" is first made against the "insured" during the "policy period", and the "claim" is reported to us in writing during the "policy period" or any applicable extended reporting period.

Unless covered under any other insuring agreement specifically listed as provided in Item 5 of the Declarations, we shall have no obligation to pay any "loss" or "cleanup costs" attributable to any irritant, contaminant or pollutant that is on, at or under a "non-owned location".

II. The following are added to DEFINITIONS (Section III.) solely with respect to coverage provided by this endorsement:

"Non-owned location" means a location that is neither partially nor wholly owned or operated by an "insured" or any subsidiary or affiliate company of an "insured" that, at the time of any treatment, recycling, reclamation, storage or disposal of any waste, products and/or materials generated from a "covered location" scheduled in this endorsement, is:

1.  Licensed and/or certified by "governmental authority" to accept waste, products and/or materials generated from a "covered location" scheduled in this endorsement; and

2.  Not listed on the CERCLA Information System (CERCLIS) as defined in the Code of Federal Regulations, 40 CFR Part 300.5 (revised as of July 1, 2000) or any state or local equivalent.

"Third party" means any person or entity other than an owner, operator, contractor or sub-contractor of the "non-owned location" or their employees.

III. The following is added to Section IV. EXCLUSIONS solely with respect to coverage provided by this endorsement:

**Products Liability**

Goods or products designed, manufactured, sold, handled, distributed, or supplied by the "insured" or by others trading under their name or under license from the "insured".

IV. CONDITIONS (Section VIII.), Condition K., Other Insurance, is replaced with the following solely with respect to coverage provided by this endorsement:

K. **OTHER INSURANCE** – When other insurance is available to the "insured" for "loss" or "cleanup costs" under the terms and conditions of this policy and this endorsement, our obligation to the "insured" shall be as follows:

1. The coverage provided by this policy and this endorsement shall apply as excess insurance over any other valid and collectible insurance, be it primary or excess.  Notwithstanding the foregoing, this excess insurance shall operate as primary insurance as a result of the receivership, insolvency, or inability to pay of any insurer with respect to both the duty to indemnify and the duty to defend but shall not apply as primary insurance to the "insured" while acting as a self-insured for any coverage.

2. Where this insurance is excess insurance, we will pay only our share of the amount of "loss" or "cleanup costs" if any, that exceeds the total amount of all such valid and collectible insurance.

The "insured" shall promptly, upon our request, provide us with copies of all policies potentially applicable to liability covered by this endorsement.

**ALL OTHER TERMS, EXCLUSIONS, AND CONDITIONS OF THE POLICY APPLY AND REMAIN UNCHANGED.**

# Z Choice Coverage E: Natural Resource Damages


**ZURICH**®

| Policy No. | Eff. Date of Pol. | Exp. Date of Pol. | Eff. Date of End. | Producer | Add'l Prem. | Return Prem. |
|---|---|---|---|---|---|---|
| EPC 5944550 02 | 11/23/2014 | 11/23/2019 | 11/23/2014 | 23801000 | --- | --- |

**Named Insured and Mailing Address:**

KEN'S FOODS, INC.
1 D'ANGELO DRIVE
MARLBOROUGH, MA 01752--3066

**Producer:**

HAYS INS BROKERAGE SERVICES OF NEW
ENGLAND, LLC
133 FEDERAL STREET
BOSTON, MA 02110-1703

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

This endorsement modifies insurance provided under the following:

**Z Choice™ Pollution Liability - Claims Made and Reported Coverage**

| Covered Location | Retroactive Date | Delimitation Date |
|---|---|---|
| SEE SCHEDULE OF COVERED LOCATIONS ENDORSEMENT # STF-EPC-150-A CW  (08/12) | | |

In consideration of the payment of premium and the Deductible by the "named insured" and in reliance upon the statements made in the application process and in the Application all of which are made a part hereof, we agree, subject to all the terms, exclusions, and conditions of the policy, that the following modifications shall apply to the policy solely with respect to coverage provided by this endorsement and only for the "covered locations" scheduled above.

I.   INSURING AGREEMENTS (Section I.) is amended to include the following BUT ONLY IF AND TO THE EXTENT COVERAGE E IS SPECIFICALLY LISTED AS PROVIDED IN ITEM 5 OF THE DECLARATIONS:

**COVERAGE E:  INJURY TO OR DESTRUCTION OF NATURAL RESOURCES**

1.   Existing Pollution Event

We will pay "other loss" that an "insured" is legally obligated to pay as a result of a "claim" for injury to or destruction of "natural resources" resulting from an "existing pollution event" on, at, under or that migrates beyond the boundaries from a "covered location",  provided the "claim" is first made against the "insured" during the "policy period" and the "claim" is reported to us in writing during the "policy period" or any applicable extended reporting period.

2.   New Pollution Event

We will pay "other loss" that an "insured" is legally obligated to pay as a result of a "claim" for injury to or destruction of "natural resources" resulting from a "new pollution event" on, at, under or that migrates beyond the boundaries from a "covered location",  provided the "claim" is first made against the "insured" during the "policy period" and the "claim" is  reported to us in writing during the "policy period" or any applicable extended reporting period.

II. The following are added to DEFINITIONS (Section III) solely with respect to coverage provided by this endorsement:

"**Other loss**" means the sum of:

1. Reasonable and necessary direct costs, including such costs of assessment associated with action necessary to restore the "natural resources" to their baseline condition as they existed prior to the "pollution event"; and

2. The "use value" between the time of a "pollution event" and restoration of the "natural resources" to the extent injured by the "pollution event"; and

3. "Claim expenses" incurred in connection with a "claim" for injury to or destruction of "natural resources".

"Other loss" does not include "cleanup costs" or "loss".

"**Use value**" means the value of the "natural resources" to the public attributable to the direct use of the services provided by such "natural resources", provided, however, that no aesthetic or historic use shall be considered in the determination of such value.

**ALL OTHER TERMS, EXCLUSIONS, AND CONDITIONS OF THE POLICY APPLY AND REMAIN UNCHANGED.**

# Minimum Earned Premium



| Policy No. | Eff. Date of Pol. | Exp. Date of Pol. | Eff. Date of End. | Producer | Add'l Prem. | Return Prem. |
|---|---|---|---|---|---|---|
| EPC 5944550 02 | 11/23/2014 | 11/23/2019 | 11/23/2014 | 23801000 | --- | --- |

**Named Insured and Mailing Address:**

KEN'S FOODS, INC.
1 D'ANGELO DRIVE
MARLBOROUGH, MA 01752--3066

**Producer:**

HAYS INS BROKERAGE SERVICES OF NEW
ENGLAND, LLC
133 FEDERAL STREET
BOSTON, MA 02110-1703

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

This endorsement modifies insurance provided under the following:

**Z Choice™ Pollution Liability – Claims Made and Reported Coverage**

In consideration of the payment of premium and the Deductible by the "named insured" and in reliance upon the statements made in the application process and in the Application all of which are made a part hereof, we agree, subject to all the terms, exclusions, and conditions of the policy, that this policy has a 25% earned premium at inception and is fully earned as of the first anniversary of the inception date.

**ALL OTHER TERMS, EXCLUSIONS, AND CONDITIONS OF THE POLICY SHALL AND REMAIN UNCHANGED.**

# Crisis Management Expense Endorsement



| Policy No. | Eff. Date of Pol. | Exp. Date of Pol. | Eff. Date of End. | Producer | Add'l Prem. | Return Prem. |
|---|---|---|---|---|---|---|
| EPC 5944550 02 | 11/23/2014 | 11/23/2019 | 11/23/2014 | 23801000 | --- | --- |

**Named Insured and Mailing Address:**

KEN'S FOODS, INC.
1 D'ANGELO DRIVE
MARLBOROUGH, MA 01752--3066

**Producer:**

HAYS INS BROKERAGE SERVICES OF NEW
ENGLAND, LLC
133 FEDERAL STREET
BOSTON, MA 02110-1703

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

This endorsement modifies insurance provided under the following:

**Z Choice® Pollution Liability - Claims Made and Reported Coverage**

In consideration of the payment of premium and the Deductible by the "named insured" and in reliance upon the statements made in the application process and in the Application all of which are made a part hereof, we agree, subject to all the terms, exclusions, and conditions of the policy, that that the following changes are made to the policy:

**I.**   Item 3. Limits of Liability of the Declarations is amended to add the following:

$50,000     Crisis Management Expense Aggregate Limit

**II.**   Item 5. Coverages of the Declarations is amended to add the following:

| INSURING AGREEMENTS | PROVIDED | SUB-LIMIT / AGGREGATE | SEPARATE DEDUCTIBLE |
|---|---|---|---|
| **Coverage R:  Crisis Management Expense** | YES | $50,000 | |

**III.**   INSURING AGREEMENTS (Section I.) is amended to include the following:

**COVERAGE R:  CRISIS MANAGEMENT EXPENSE**

We will pay "crisis management expense" in response to a "pollution event" that the "named insured" reasonably expects could give rise to "loss" or "cleanup costs" under the policy and subjects the "named insured" to significant adverse regional or national media attention.  "Crisis management expense" must be first incurred by the "insured" during the "policy period".

**IV.**   DEFINITIONS (Section III) is amended to include the following solely with respect to coverage provided by this endorsement:

**"Crisis management expense"** means reasonable and necessary costs, charges, expenses and fees that are incurred by the "insured":

1.   To retain a public relations or crisis management firm with our consent which shall not be unreasonably withheld, to help maintain or restore public confidence in the "named insured";

2.   For essential emergency travel expenses incurred by the "named insured's" principals, partners, directors or employees;

3.   For rental of temporary staging or meeting space necessitated by the unavailability of the "named insured's" space as a result of the "pollution event";

4.   For any other services or activities for which we have given our prior written consent.

**V.** LIMITS OF LIABILITY AND DEDUCTIBLE (Section VI) is amended to include the following:

**H.  CRISIS MANAGEMENT EXPENSE AGGREGATE LIMIT**

The most we will pay for all "crisis management expense" to which this insurance applies is the Crisis Management Expense Aggregate Limit set forth in Item 3 of the Declarations. The Crisis Management Expense Aggregate Limit does not reduce or exhaust any other Limit of Liability.

**ALL OTHER TERMS, EXCLUSIONS, AND CONDITIONS OF THE POLICY APPLY AND REMAIN UNCHANGED.**

# Cleanup Costs (including Green Remediation and Green Standards) Endorsement



| Policy No. | Eff. Date of Pol. | Exp. Date of Pol. | Eff. Date of End. | Producer | Add'l Prem. | Return Prem. |
|---|---|---|---|---|---|---|
| EPC 5944550 02 | 11/23/2014 | 11/23/2019 | 11/23/2014 | 23801000 | --- | --- |

**Named Insured and Mailing Address:**

KEN'S FOODS, INC.
1 D'ANGELO DRIVE
MARLBOROUGH, MA 01752--3066

**Producer:**

HAYS INS BROKERAGE SERVICES OF NEW ENGLAND, LLC
133 FEDERAL STREET
BOSTON, MA 02110-1703

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

This endorsement modifies insurance provided under the following:

**Z Choice® Pollution Liability - Claims Made and Reported Coverage**

In consideration of the payment of premium and the Deductible by the "named insured" and in reliance upon the statements made in the application process and in the Application all of which are made a part hereof, we agree, subject to all the terms, exclusions, and conditions of the policy, that that the following changes are made to the policy:

I.  Item 3. Limits of Liability of the Declarations is amended to add the following:

     $ 50,000    Green Remediation Aggregate Limit

     $ 50,000    Green Standards Aggregate Limit

II.  DEFINITIONS (Section III.) is amended as follows:

     (a)  Paragraph D. "cleanup costs" is deleted in its entirety and replaced with the following:

        **D.  "Cleanup costs"** means:

           1.  Reasonable and necessary costs, charges and expenses, incurred in the investigation, removal, remediation (including associated monitoring), neutralization or immobilization of contaminated soil, surface water, groundwater, or other contamination:

             (a)  To the extent required by "governmental authority", plus reasonable additional costs, charges and expenses incurred, at the "insured's" election, for "green remediation" not to exceed the Green Remediation Aggregate Limit set forth in Item 3 of the Declarations, where such "green remediation" is neither legally necessary nor required by "governmental authority"; or

             (b)  That have actually been incurred by the government or any political subdivision of the United States of America or any state thereof or Canada or any province thereof, or by third parties;

           2.  Where real property or improvements thereto are damaged in the course of performing the activities described in paragraph 1. above, reasonable and necessary costs, charges and expenses to repair, replace or rebuild such real property or improvements to substantially their condition immediately prior to any such damage, plus reasonable additional costs, charges and expenses to repair, replace or rebuild such damaged property to comply with applicable "green standards" not to exceed the Green Standards Aggregate Limit set forth in Item 3 of the Declarations; but excluding any:

             (a)  Damage caused by the underlying "pollution event"; or

(b) Other than "green standards" as described above, any costs, charges or expenses for improvements or betterments, including, but not limited to, those arising from compliance with any law that was not applicable to (including by operation of any grandfather provision contained in any such law) or not enforced against the property before it was so damaged; and

3. "Claim expenses" in connection with a "claim" for "cleanup costs";

4. With respect to "discovery, only those "reasonable legal costs" incurred with our prior written consent; and

5. "Emergency expense".

"Cleanup costs" does not include "loss" for "property damage", "natural resource damages" or any other compensation for injury to or destruction of "natural resources".

(b) The following definitions are added:

**"Green standards"** means the following standards, products, methods, and processes for improving the environment, increasing energy efficiency, and enhancing safety and property protection:

1. LEED® Green Building Rating System™ of the U.S. Green Building Council;

2. Green Globes™ Assessment and Rating System;

3. ENERGY STAR®; and

4. National Fire Protection Association codes, Underwriter Laboratories standards, or other local or international codes.

**"Green remediation"** means the use of cleanup technologies considering the *Principles for Greener Cleanups* developed by the United States Environmental Protection Agency Office of Solid Waste and Emergency Response and Technology Innovation dated August 2009.

III. LIMITS OF LIABILITY AND DEDUCTIBLE (Section VI.) is amended to include the following:

#### F.  GREEN REMEDIATION AGGREGATE LIMIT

The Green Remediation Aggregate Limit is the most we will pay for all costs, charges and expenses for "green remediation". The Green Remediation Aggregate Limit does not reduce or exhaust any other Limit of Liability.

#### G.  GREEN STANDARDS AGGREGATE LIMIT

The Green Standards Aggregate Limit is the most we will pay for all costs, charges and expenses to comply with "green standards". The Green Standards Aggregate Limit does not reduce or exhaust any other Limit of Liability.

**ALL OTHER TERMS, EXCLUSIONS, AND CONDITIONS OF THE POLICY APPLY AND REMAIN UNCHANGED.**

# Important Notice
**Service of Suit and In Witness Clause**



**ZURICH**®

### Service of Suit

In the event an action or proceeding arises under the contract, it is agreed that the Company, at your request, will submit to the jurisdiction of a court of competent jurisdiction within the United States. Nothing in this condition constitutes or should be understood to constitute a waiver or limitation of the right to arbitration as set forth herein or to commence an action in any court of competent jurisdiction in the United States to remove an action to a United States District Court or to seek a transfer of a case to another court as permitted by the laws of the United States or any state in the United States. It is further agreed that service of process in such suit may be made upon Illinois Corporation Service Company, 801 Adlai Stevenson Drive, Springfield, IL 62703. In any suit instituted against the Company upon this policy, the Company will abide by the final decision of such court or of any appellate court in the event of an appeal.

Further, pursuant to any statute of any state, territory, or district of the United States which makes provision therefore, the Company hereby designates the Superintendent, Commissioner or Director of Insurance, other officer specified for that purpose in the statute, or his successors in office as its true and lawful attorney upon whom may be served any lawful process in any action, suit, or proceeding instituted by or on behalf of the Insured of any beneficiary hereunder arising out of this policy of insurance and hereby designates the above named Illinois Corporation Service Company as the entity to whom the said officer is authorized to mail such process or a true copy thereof.

### In Witness Clause

In return for the payment of premium, and subject to the terms of this policy, coverage is provided as stated in this policy.

IN WITNESS WHEREOF, this Company has executed and attested these presents and, where required by law, has caused this policy to be countersigned by its duly Authorized Representative(s).


_Nancy D. Mueller_

President

_signature_

Corporate Secretary

---

**QUESTIONS ABOUT YOUR INSURANCE?** Your agent or broker is best equipped to provide information about your insurance. Should you require additional information or assistance in resolving a complaint, call or write to the following (please have your policy or claim number ready):

Zurich in North America
Customer Inquiry Center
1400 American Lane
Schaumburg, Illinois 60196-1056
**1-800-382-2150** (Business Hours: 8am - 4pm [CT])
**Email:** info.source@zurichna.com

---



**ZURICH**

## THIS ENDORSEMENT IS ATTACHED TO AND MADE PART OF YOUR POLICY.
## THIS ENDORSEMENT DOES NOT GRANT ANY COVERAGE OR CHANGE THE TERMS AND CONDITIONS OF ANY COVERAGE UNDER THE POLICY.

# DISCLOSURE OF PREMIUM
# (RELATING TO DISPOSITION OF TRIA)

### SCHEDULE*

---

**(1)** Premium attributable to risk of loss from certified acts of terrorism through the end of the policy period based on the extension of the Terrorism Risk Insurance Act of 2002, as amended by the Terrorism Risk Insurance Extension Act of 2005, ("TRIA") for lines subject to TRIA and the Terrorism Risk Insurance Program Reauthorization Act of 2007 (TRIPRA):

1% OF POLICY PREMIUM

If TRIA terminates, the portion of this premium attributable to the remaining part of the policy period, as modified by any change shown in **(2)** of this Schedule, applies to the risk of loss from terrorism after the termination of TRIA.

**(2)** Premium change upon termination of TRIA or upon applicability of a Conditional Endorsement:

No change unless one of the following is completed -

Return Premium:  N/A

Additional Premium: N/A

If we notify you of an additional premium charge, the additional premium will be due as specified in such notice.

---

*Information required to complete this Schedule, if not shown above, will be shown in the Declarations.

**A. Disclosure of Premium**

In accordance with the TRIA, we are required to provide you with a notice disclosing the portion of your premium, if any, attributable to the risk of loss from terrorist acts certified under that Act for lines subject to TRIA. That portion of your premium attributable is shown in the Schedule of this endorsement or in the Declarations.

**B. Disclosure of Federal Participation in Payment of Terrorism Losses**

The United States Government, Department of the Treasury, will pay a share of terrorism losses insured under the federal program. The federal share equals 85% of that portion of the amount of such insured losses that exceeds the applicable insurer retention. The Act currently provides for no insurance industry or United States government participation in terrorism losses that exceed $100 billion in any one calendar year.  The federal program established by the Act is scheduled to terminate at the end of December 31, 2014 unless extended by the federal government.

**C. Possibility of Additional or Return Premium**

The premium attributable to the risk of loss from certified acts of terrorism coverage is calculated based on the coverage (if any) in effect at the beginning of your policy for certified acts of terrorism.  If your policy contains a Conditional Endorsement, the termination of TRIA or extension of the federal program with certain modifications (as explained in that endorsement) may modify the extent of coverage (if any) your policy provides for terrorism. If TRIA terminates or the Conditional Endorsement becomes applicable to your policy, the return premium (if any) or additional premium (if any) shown in **(2)** of the Schedule will apply. If the level or terms of federal participation change, the premium shown in **(1)** of the Schedule attributable to that part of the policy period extending beyond such a change may not be appropriate and we will notify you of any changes in your premium.

Includes copyrighted material of ISO Properties, Inc. with its permission.
Copyright Zurich American Insurance Company 2013

# Cap On Losses From Certified Acts Of Terrorism


**ZURICH**®

| Policy No. | Eff. Date of Pol. | Exp. Date of Pol. | Eff. Date of End. | Producer | Add'l Prem. | Return Prem. |
|---|---|---|---|---|---|---|
| ZRE 5944550 02 | 11/23/2014 | 11/23/2019 | 11/23/2014 | 23801000 | --- | --- |

**Named Insured and Mailing Address:**

KEN'S FOODS, INC.
1 D'ANGELO DRIVE
MARLBOROUGH, MA 01752--3066

**Producer:**

HAYS INS BROKERAGE SERVICES OF NEW
ENGLAND, LLC
133 FEDERAL STREET
BOSTON, MA 02110-1703

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

This endorsement modifies insurance provided under the following:

**Z Choice Pollution Liability - Claims Made and Reported Coverage**

**A.  Cap on Losses From Certified Terrorism Losses**

"Certified act of terrorism" means an act that is certified by the Secretary of the Treasury, in concurrence with the Secretary of State and the Attorney General of the United States, to be an act of terrorism pursuant to the federal Terrorism Risk Insurance Act ("TRIA").  The Terrorism Risk Insurance Act provides that the Secretary of Treasury shall certify an act of terrorism:

1. to be an act of terrorism;

2. to be a violent act or an act that is dangerous to human life, property or infrastructure;

3. to have resulted in damage within the United States, or outside of the United States in the case of  an air carrier (as defined in section 40102 of Title 49, United States Code) or a United States flag vessel (or a vessel based principally in the United States, on which United States income tax is paid and whose insurance coverage is subject to regulation in the United States), or the premises of a United States mission; and

4. to have been committed by an individual or individuals as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

No act may be certified as an act of terrorism if the act is committed as part of the course of a war declared by Congress (except for workers' compensation) or if losses resulting from the act, in the aggregate for insurance subject to TRIA, do not exceed $5,000,000.

If aggregate insured losses attributable to one or more "certified acts of terrorism" exceed $100 billion in a Program Year (January 1 through December 31) and we have met our insurer deductible under the Terrorism Risk Insurance Act, we shall not be liable for the payment of any portion of the amount of such losses that exceeds $100 billion, and in such case insured losses up to that amount are subject to pro rata allocation in accordance with procedures established by the Secretary of Treasury.

**B.  Application of Other Exclusions**

The terms and limitations of a terrorism exclusion or any other exclusion, or the inapplicability or omission of a terrorism exclusion or any other exclusion, do not serve to create coverage which would otherwise be excluded, limited or restricted under this policy.

**ALL OTHER TERMS AND CONDITIONS OF THE POLICY SHALL APPLY AND REMAIN UNCHANGED.**